**PUBLISH**

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE ELEVENTH CIRCUIT**
_____

No. 97-2360
_____
D. C. Docket Nos. 96-0072-CIV-FTM-17D
96-0115-CIV-FTM-17D

JANET JACKSON, DELOIS EVANS,

Plaintiff-Appellees,

versus

MOTEL 6 MULTIPURPOSE, INC.; MOTEL 6 G.P., INC.;
MOTEL 6 OPERATING L.P.; IBL LIMITED, INC., d.b.a.
Motel 6; ACCOR S.A.;

Defendants-Appellants.
_____

MARIO PETACCIA; BRENDA HATCHER; TANYA CHARLES;
CHERVON SCREEN; JENNIFER BETHEL; JAMES STERNS;
PITRELL LAMBERT-BROWN; KARL BALDWIN;
MARCIAN KILLSNIGHT, for themselves and all
others similarly situated,

Plaintiffs-Appellees,

versus

MOTEL 6 G.P., INC.; MOTEL 6 OPERATING L.P.
d.b.a. Motel 6,

Defendants-Appellants.

_____
Appeal from the United States District Court for the
Middle District of Florida
_____

**(December 10, 1997)**

Before TJOFLAT, BIRCH and MARCUS*, Circuit Judges.

_____
*Honorable Stanley Marcus was a U.S. District Judge of the
Southern District of Florida sitting by designation as a member
of this panel when this appeal was argued and taken under
submission.  On November 24, 1997 he took the oath of office as a

United States Circuit Judge of the Eleventh Circuit.

TJOFLAT, Circuit Judge:

Motel 6 Multipurpose, Inc. ("Motel 6") seeks a writ of mandamus[1] vacating a district court order, issued on February 21, 1997, authorizing the plaintiffs in two consolidated race discrimination cases to advertise their allegations to the public at large and to communicate with current and former Motel 6 employees through mass mailings. Motel 6 also requests that the writ direct the district court to decertify one of the two putative classes. We conclude that the district court's February 21 order constitutes an abuse of discretion, and that the challenged class was erroneously certified. We therefore grant the petition and issue the writ.

I.

Motel 6 owns and operates over 750 motels across the United States. The instant petition for mandamus arises from two consolidated cases alleging that Motel 6 has a nationwide practice or policy of discriminating against its customers and its employees on the basis of race. In the first case, five Motel 6 patrons ("the Jackson plaintiffs") claim that Motel 6 unlawfully discriminated against them on the basis of their race. They claim that they were either denied accommodations at a Motel

---

[1] Writs of mandamus are issued pursuant to the All Writs Act, 28 U.S.C. § 1651(a) (1994).

2

6 motel or provided substandard accommodations pursuant to an alleged nationwide Motel 6 practice or policy of (1) refusing to rent otherwise vacant rooms to blacks and other non-white persons, (2) segregating black patrons and other non-white patrons from white patrons within a single facility, and (3) providing substandard housekeeping and other services to black patrons and other non-white patrons as compared to white patrons. Two of the five named plaintiffs allege that they were denied rooms at the same motel; the remaining three named plaintiffs each allege that they were subjected to discriminatory treatment at three separate other motels. The Jackson plaintiffs seek, on behalf of themselves and similarly situtated patrons of Motel 6, injunctive relief and money damages under Title II of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000a et seq.,[2] and under 42 U.S.C. § 1981.[3]

---

[2] Section 2000a reads, in pertinent part:

§ 2000a. Prohibition against discrimination or segregation in places of public accommodation

(a) Equal access

All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.

42 U.S.C. § 2000a (1994).

[3] Section 1981 in its entirety reads:

§ 1981. Equal rights under the law

(a) Statement of equal rights

3

In the second case, five former Motel 6 employees ("the Petaccia plaintiffs") claim that, as Motel 6 employees, they were required to discriminate against black and other non-white patrons, that Motel 6 retaliated against them when they refused to do so, and that Motel 6's discrimination against blacks and other non-whites created a "hostile work environment." The Petaccia plaintiffs seek, on behalf of themselves and all Motel 6 employees who have been required to work in the alleged hostile environment, injunctive relief and money damages under § 1981 and the retaliation provision of Title II.[4]

---

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981 (1994).

[4] That provision, 42 U.S.C. § 2000a-2, provides in relevant part that

4

After the cases were consolidated, the plaintiffs moved for an order allowing them relief from the Middle District of Florida's Local Rule 4.04(e), which provides that

> [i]n every case sought to be maintained by any party as a class action, all parties thereto and their counsel are hereby forbidden, directly or indirectly, orally or in writing, to communicate concerning such actions with any potential or actual class member, not a formal party to the case, without approval by the Court.

The district court granted relief from Local Rule 4.04(e) in a February 21, 1997, order that authorized the plaintiffs to:

> 1) establish a 1-800 number to which potential class members may call;
>
> 2) publish notices of the ongoing litigation in publications nationwide and solicit information about potential class members and their alleged experiences with discrimination at Motel 6 motels;
>
> 3) respond to requests for information from those who respond to the advertisements or call the 1-800 number;
>
> 4) distribute mass mailings to Motel 6 employees soliciting information regarding the plaintiffs' allegations of discrimination at Motel 6 motels; and
>
> 5) further communicate ex parte with any "persons who may have knowledge of" the alleged discrimination, except for current Motel 6 management or supervisory employees.

The district court entered this order allowing communication with potential class members even though it had not yet ruled on

---

> [n]o person shall . . . intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person with the purpose of interfering with any right or privilege secured by section 2000a or 2000a-1 of this title . . . .

42 U.S.C. § 2000a-2 (1994). As we discuss infra, the Petaccia plaintiffs do not have standing to bring a claim for injunctive relief under this section.

5

either the <u>Jackson</u> plaintiffs' or the <u>Petaccia</u> plaintiffs' motions for class certification.[5]

Motel 6 then moved the lower court for a stay of the communications order pending appeal; that motion was denied. <u>See Jackson v. Motel 6 Multipurposes, Inc.</u>, 172 F.R.D. 469 (M.D. Fla. 1997). Motel 6 then appealed the denial of the motion for a stay and filed a petition for a writ of mandamus, on the ground that the lower court had misapplied the controlling precedents of <u>Bernard v. Gulf Oil Co.</u>, 619 F.2d 459 (5th Cir. 1980) (en banc)[6] and <u>Gulf Oil Co. v. Bernard</u>, 452 U.S. 89 (1981). This court declined to stay the discovery order on appeal and denied the petition for mandamus. On May 1, 1997, Motel 6 requested a stay of the order from the Supreme Court. On May 2, Circuit Justice Kennedy denied that request.

On August 15, 1997, the district court certified the <u>Jackson</u>

---

[5] The district court noted that the plaintiffs' assertions that they needed to communicate with potential class members in order to build an adequate record for class certification were "highly suspect[,] in light of the fact that the plaintiffs ha[d] long since filed their motions for class certification." The court nonetheless granted the motion allowing communication with potential class members, in light of, <u>inter</u> <u>alia</u>, "the potentially large size of the class . . . the serious allegations of racial discrimination, [and] the plaintiffs' need to effectively prepare for trial." We agree that the allegations of discrimination are serious and that the plaintiffs need effectively to prepare for what will no doubt be a fairly complicated trial. Because we hold that the putative <u>Jackson</u> class cannot be certified, however, <u>see</u> <u>infra</u> part II, the <u>Jackson</u> plaintiffs will need to prepare for trial of only their own claims, serious as those claims may be.

[6] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

plaintiffs as class representatives and referred the question of certification of the <u>Petaccia</u> plaintiffs to a magistrate judge for further consideration.

Motel 6 now petitions for mandamus again, arguing that the communications order was an abuse of discretion <u>ab</u> <u>initio</u>, and also that because the <u>Jackson</u> plaintiffs cannot properly be certified as class representatives, that portion of the communications order allowing the <u>Jackson</u> plaintiffs to advertise their allegations nationwide and to communicate with current and former Motel 6 employees is entirely unnecessary and an abuse of the district court's discretion.[7] We agree that the

---

[7] The plaintiffs argue that the law of the case doctrine prevents us from hearing this second petition for mandamus relief. The law of the case doctrine provides that an appellate court's decision of a legal issue must be followed in all subsequent trial or intermediate appellate proceedings in the same case, <u>see</u> <u>DeLong Equip. Co. v. Washington Mills Electro Minerals Corp.</u>, 990 F.2d 1186, 1196 (11th Cir. 1993), unless "(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to [the contested] issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." <u>Barber v. International Bhd. of Boilermakers, Dist. Lodge # 57</u>, 841 F.2d 1067, 1072 (11th Cir. 1988). In order for the law of the case doctrine to apply, however, the issue contested on the latter appeal must be the same issue that was contested on and decided by the former appeal. <u>See</u> <u>Lawson v. Singletary</u>, 85 F.3d 502, 512-13 (11th Cir. 1996) (concluding that law of the case doctrine did not preclude later appeal where, <u>inter</u> <u>alia</u>, the focus of the former appeal was on a different issue). In the instant case, Motel 6 first petitioned for mandamus on the ground that the lower court had misapplied the controlling precedents of <u>Bernard v. Gulf Oil Co.</u> and <u>Gulf Oil Co. v. Bernard</u> in deciding to grant relief from Local Rule 4.04(e). The instant petition proffers a wholly different ground for relief: that the district court's August 15 decision to certify the <u>Jackson</u> class was clearly erroneous and that the authorization of class communications by the <u>Jackson</u> plaintiffs was therefore an abuse of discretion. Because the petition before us now rests on a different ground than the first petition, the law of the case doctrine does not

7

communications order was an abuse of discretion from the beginning, and we agree that the Jackson class was erroneously certified.  We therefore grant the writ and direct the district court to decertify the Jackson class and to strike that portion of its February 21 order allowing the Jackson plaintiffs to communicate with putative class members.  We also conclude that the February 21 order constitutes an abuse of discretion insofar as it authorizes the Petaccia plaintiffs to advertise their claims nationwide and conduct mass mailings to Motel 6 employees.  We therefore also direct the district court to vacate the communications order insofar as it applies to the Petaccia plaintiffs.[8]

II.

In In re Estelle, 516 F.2d 480 (5th Cir. 1975), we outlined the purview of mandamus:

> The Writs of Mandamus and Prohibition are granted sparingly.  Such writs are reserved for really extraordinary cases, and should be issued only when the right to such relief is clear and indisputable.  To some extent they are supervisory in nature and are used to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.  They are not to be used as a substitute for appeal, or to control the decision of the trial court in discretionary matters.

preclude our consideration of the instant petition.

[8] We thus direct the district court to vacate the February 21 order in its entirety.  For clarity's sake, however, we will proceed to discuss the two cases separately, and will refer to those "portions" of the communications order that are at issue in each case.

The Writ is thus a drastic remedy, that must not be used to regulate the trial court's judgment in matters properly left to its sound discretion, but that may be available to confine the lower court to the sphere of its discretionary power.

Id. at 483 (internal citations and quotations omitted). We may issue the writ "only in drastic situations, when no other adequate means are available to remedy a clear usurpation of power or abuse of discretion." In re Temple, 851 F.2d 1269, 1271 (11th Cir. 1988).

We hold that the instant petition warrants the issuance of mandamus because the district court's order allowing the plaintiffs to communicate with potential class members was an abuse of discretion. The communications order was entered months prior to any decision regarding whether either of the two proposed classes would in fact be certified. While we cannot say that orders authorizing communication with potential class members may never precede class certification, district courts must strive to avoid authorizing injurious class communications that might later prove unnecessary. An order authorizing class communications prior to class certification is likely to be an abuse of discretion when (1) the communication authorized by the order is widespread and clearly injurious and (2) a certification decision is not imminent or it is unlikely that a class will in fact be certified. In such circumstances, the danger of abuse that always attends class communications--the possibility that plaintiffs might use widespread publication of their claims, disguised as class communications, to coerce defendants into

9

settlement--is not outweighed by any need for immediate communications.

The advertisements and mass mailings allowed by the order at issue in the instant petition are nationwide in scope and are surely causing serious and irreparable harm to Motel 6's reputation and to its relationship with its employees. "The only conceivable alternative [to mandamus relief]--inevitable reversal by this court after the defendants have been forced to endure full discovery, full litigation, and a full trial--is scarcely adequate" to redress this injury. In re Cooper, 971 F.2d 640, 641 (11th Cir. 1992) (internal quotations omitted). Moreover, the order was entered almost six months prior to the court's decision to certify the Jackson class and to refer the Petaccia plaintiffs' motion for class certification to a magistrate judge. (The Petaccia plaintiffs' motion for class certification is still pending.) Most important, the Jackson plaintiffs clearly could not properly be certified as class representatives.

A.

The Supreme Court has noted that,

[though] racial discrimination is by definition class discrimination[, . . .] the allegation that such discrimination has occurred neither determines whether a class action may be maintained in accordance with Rule 23 nor defines the class that may be certified. Conceptually, there is a wide gap between (a) an individual's claim that he has been [discriminated against on the basis of race], and his otherwise unsupported allegation that [the defendant] has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and

> the class claims will share common questions of law or
> fact.

General Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 156, 102 S.Ct. 2364, 2370, 72 L.Ed.2d 740 (1982) (footnotes omitted). The putative Jackson class is not certifiable because it fails the predominance requirement of Federal Rule of Civil Procedure 23(b)(3).

A class action may be maintained only when it satisfies all the requirements of Fed. R. Civ. P. 23(a)[9] and at least one of the alternative requirements of Rule 23(b).[10]  The only one of

---

[9]  Rule 23(a) in its entirety provides that

[o]ne or more members of a class may sue or be sued on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.


[10]  Rule 23(b) in its entirety provides:

Class Actions Maintainable.  An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

> (1) the prosecution of separate actions by or against individual members of the class would create a risk of

>> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
>> (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to

11

Rule 23's alternatives that is arguably fulfilled by the <u>Jackson</u>

plaintiffs' claims is that found in Rule 23(b)(3), which provides

that

> [a]n action may be maintained as a class action if the
> prerequisites of subdivision (a) are satisfied, and in
> addition . . .
>
> (3) the court finds that the questions of law or fact
> common to the class predominate over any questions
> affecting only individual members, and that a class
> action is superior to other available methods for the
> fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).  "In other words, 'the issues in the

---

> > the adjudications or substantially impair or
> > impede their ability to protect their
> > interests; or
> >
> > (2) the party opposing the class has acted or
> > refused to act on grounds generally applicable to
> > the class, thereby making appropriate final
> > injunctive relief or corresponding declaratory
> > relief with respect to the class as a whole; or
> >
> > (3) the court finds that the questions of law or
> > fact common to the class predominate over any
> > questions affecting only individual members, and
> > that a class action is superior to other available
> > methods for the fair and efficient adjudication of
> > the controversy.  The matters pertinent to the
> > findings include: (A) the interest of members of
> > the class in individually controlling the
> > prosecution or defense of separate actions; (B)
> > the extent and nature of any litigation concerning
> > the controversy already commenced by or against
> > members of the class; (C) the desirability or
> > undesirability of concentrating the litigation of
> > the claims in the particular forum; (D) the
> > difficulties likely to be encountered in the
> > management of a class action.

> Fed. R. Civ. P. 23(b).  For the reasons recited in the text, in
> considering the factors listed in Rule 23(b)(3), we find that
> management of the <u>Jackson</u> class action would involve overwhelming
> difficulties, and that concentration of the highly case-specific
> claims of dozens or hundreds of plaintiffs from around the
> country in the Middle District of Florida would be undesirable.

12

class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof.'" Kerr v. City of West Palm Beach, 875 F.2d 1546, 1557-58 (11th Cir. 1989), quoting Nichols v. Mobile Bd. of Realtors, Inc., 675 F.2d 671, 676 (5th Cir. Unit B 1982).[11] The predominance inquiry focuses on "the legal or factual questions that qualify each class member's case as a genuine controversy," and is "far more demanding" than Rule 23(a)'s commonality requirement. Amchem Prods., Inc. v. Windsor, --- U.S. ---, ---, 117 S.Ct. 2231, 2249-50, 138 L.Ed.2d 689 (1997).

The Jackson plaintiffs have argued that the issue common to the claims of all the named plaintiffs and all putative class members--whether Motel 6 has a practice or policy of discriminating against patrons and employees on the basis of race--predominates over all the legal and factual issues that will attend various plaintiffs' and class members' individual claims. The district court agreed, on the ground that "forum-by-forum resolution of each and every issue in this case . . . would be far less efficient, cost-effective, and uniform than class resolution." Rule 23(b)(3), however, imposes two additional requirements, and increased efficiency is only one of them. Predominance is the other, and the single common issue in the

---

[11] In Stein v. Reynolds Securities, Inc., 667 F.2d 33 (11th Cir. 1982), this court adopted as binding precedent all decisions of Unit B of the former Fifth Circuit handed down after September 30, 1981.

<u>Jackson</u> case--whether Motel 6 has a practice or policy of discrimination--is not rendered predominant over all the other issues that will attend the <u>Jackson</u> plaintiffs' claims by the fact that class treatment of these claims may be more efficient and uniform than case-by-case adjudication.[12]  Instead, "as a practical matter, the resolution of this overarching common issue breaks down into an unmanageable variety of individual legal and factual issues."  <u>Andrews v. American Tel. & Tel. Co.</u>, 95 F.3d 1014, 1023 (11th Cir. 1996) (citation omitted).

The <u>Jackson</u> plaintiffs' claims will require distinctly case-specific inquiries into the facts surrounding each alleged incident of discrimination.  The issues that must be addressed include not only whether a particular plaintiff was denied a room or was rented a substandard room, but also whether there were any rooms vacant when that plaintiff inquired; whether the plaintiff had reservations; whether unclean rooms were rented to the plaintiff for reasons having nothing to do with the plaintiff's race; whether the plaintiff, at the time that he requested a

---

[12]  The predominance and efficiency criteria are of course intertwined.  Where there are predominant issues of law or fact, resolution of those issues in one proceeding efficiently resolves those issues with regard to all claimants in the class.  Where there are no predominant issues of law or fact, however--as in the instant case--class treatment would be either singularly inefficient, as one court attempts to resolve diverse claims from around the country in its own courtroom, or unjust, as the various factual and legal nuances of particular claims are lost in the press to clear the lone court's docket.  We therefore disagree with the district court's conclusion that class treatment of the Jackson plaintiffs' claims would be more efficient than case-by-case adjudication, as well as with the court's conclusion that the issue of a discriminatory practice or policy is predominant.

14

room, exhibited any non-racial characteristics legitimately counseling against renting him a room; and so on.  Even more variegated issues would certainly be present in the claims of hundreds or even thousands of members of an improperly certified class.  Furthermore, even factual issues that are common to many of the Jackson plaintiffs -- such as whether any rooms were in fact available when a particular plaintiff inquired -- will require highly case-specific determinations at trial.  These issues are clearly predominant over the only issue arguably common to the class--whether Motel 6 has a practice or policy of racial discrimination.  Indeed, we expect that most, if not all, of the plaintiffs' claims will stand or fall, not on the answer to the question whether Motel 6 has a practice or policy of racial discrimination, but on the resolution of these highly case-specific factual issues.[13]

---

[13]  As the district court noted in its order certifying the Jackson class, each plaintiff will need to establish that (1) a Motel 6 employee denied him a room (or rented him a substandard room) on the basis of his race and either (2) that that employee had the general authority to rent motel rooms or (3) that that employee was acting in accordance with a Motel 6 policy or practice of racial discrimination.  See, e.g., Woodhouse v. Motel 6 G.P., Inc., 67 F.3d 310 (9th Cir. 1995) (unpublished disposition).  Every named Jackson plaintiff alleges that he or she was denied a room or rented a substandard room by a Motel 6 employee at the front desk of a Motel 6 motel.  We believe it very probable that all these front-desk employees had the general authority to rent motel rooms.  The question whether Motel 6 has a practice or policy of racial discrimination will therefore be irrelevant to all or nearly all of the plaintiffs' claims.  Because proposition (2) will be satisfied--and we expect very readily satisfied--with regard to all or almost all of the plaintiffs' claims, the cases may be expected to focus on the highly case-specific factual inquiries that will establish or controvert element (1).  Those factual inquiries will therefore be predominant.

15

This failure of predominance is readily apparent from a reading of the _Jackson_ plaintiffs' complaint. We therefore hold that the district court's certification of the _Jackson_ class was erroneous as a matter of law and was therefore an abuse of discretion. See _Cooter & Gell v. Hartmarx Corp._, 496 U.S. 384, 405, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990). We have in the past issued mandamus to direct a district court to decertify an improperly certified class, when the certification of that class was a clear abuse of discretion. See, e.g., _In re Temple_, 851 F.2d 1269. On the instant petition, we are compelled to do so again.

In sum, we hold that the district court abused its discretion in entering an order allowing communication with potential class members when the authorized communications would be nationwide in scope and would cause serious and irreparable injury to the defendant, when a decision on class certification was not imminent, and when the proposed _Jackson_ class was clearly not certifiable. Under these circumstances, there was no need for the plaintiffs immediately to begin the highly injurious publication of their claims authorized by the order--publication that could and did continue for months, as the court contemplated the plaintiffs' motions for class certification. We therefore grant Motel 6's petition for mandamus relief and issue the writ, directing the district court to decertify the _Jackson_ class and to vacate the portion of its February 21 order that authorizes preliminary class communications by the _Jackson_ plaintiffs.

16

B.

As noted above, the Petaccia plaintiffs allege that they were required as part of their employment by Motel 6 to participate in discrimination against non-white customers, that they were retaliated against when they refused to do so, and that Motel 6's discrimination against non-white customers, along with other instances of discriminatory treatment, created a hostile work environment at Motel 6 motels around the country.

The Petaccia plaintiffs' claim for "retaliation" is brought under 42 U.S.C. §§ 1981[14] and 2000a-2.[15] As an initial matter, we note that the Petaccia plaintiffs do not have standing to maintain their claim for retaliation under section 2000a-2. Section 2000a-2 provides solely for injunctive relief. See Newman v. Piggie Park Enters., Inc., 390 U.S. 400, 401-02, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968); Miller v. Amusement Enters., Inc., 426 F.2d 534, 538 (5th Cir. 1970).[16] The Supreme

---

[14] See supra note 3.

[15] See supra note 4.

[16] We note also that the Petaccia plaintiffs' claim for "retaliation" could not proceed under the familiar Title VII retaliation statute, 42 U.S.C. § 2000e-3(a). That statute prohibits employers from discriminating against employees who "oppose[] any. . . unlawful employment practice." The Petaccia plaintiffs do not allege that they have been discriminated against by Motel 6 for opposing an unlawful employment practice, but that they were discriminated against for opposing an unlawful practice of discrimination in the provision of public accommodations. While money damages are available for violations of section 2000e-3(a), see St. Mary's Honor Center v. Hicks, 509 U.S. 502, 523-24, 113 S.Ct. 2742, 2756, 125 L.Ed.2d 407 (1993), violations of section 2000a-2 may be remedied only by injunctive relief, and not by money damages. See Piggie Park, 390 U.S. at

17

Court has held that, in order to claim injunctive relief, a plaintiff must show a "real or immediate threat that the plaintiff will be wronged again--'a likelihood of substantial and immediate irreparable injury.'" City of Los Angeles v. Lyons, 461 U.S. 95, 111, 103 S.Ct. 1660, 1670, 75 L.Ed.2d 675 (1983) (quoting O'Shea v. Littleton, 414 U.S. 488, 502, 94 S.Ct. 669, 679, 38 L.Ed.2d 674 (1974)). The Petaccia plaintiffs are all former employees of Motel 6, and allege neither that they will be discriminated against by Motel 6 in the future nor any facts that would support such a conclusion. Thus, the Petaccia plaintiffs do not have standing to bring their "retaliation" claim under section 2000a-2. The Petaccia plaintiffs' claim for retaliation may, however, proceed under section 1981(b), which provides for money damages. See Pinkard v. Pullman-Standard, 678 F.2d 1211, 1229 n.15 (5th Cir. Unit B, June 10, 1982) (Clark, J., and Kravitch, J., concurring) (stating that section 1981 prohibits retaliatory treatment, and citing cases); Mizell v. North Broward Hosp. Dist., 427 F.2d 468, 472 (5th Cir. 1970) (allowing section 1981 claims for both damages and injunctive relief); see also, e.g., Caldwell v. National Brewing Co., 443 F.2d 1044, 1046 (5th Cir. 1971) (allowing section 1981 retaliation claim to proceed without exhaustion of Title VII administrative remedies); Patterson v. Augat Wiring Sys., Inc., 944 F.Supp. 1509, 1518-21 (M.D. Ala. 1996) (allowing section 1981 retaliation claims after passage of Civil Rights Act of 1991 and enactment of section

---

401-02, 88 S.Ct. at 966.

18

1981(b)).

We assume for the sake of discussion that the <u>Petaccia</u> plaintiffs have sufficiently stated a cause of action for a racially hostile work environment under section 1981.[17]  <u>See, e.g.</u>, <u>Williams v. Carrier Corp.</u>, 889 F.Supp. 1528, 1530 (M.D. Ga. 1995) (allowing section 1981 hostile environment claim after passage of section 1981(b)).  We note that the named <u>Petaccia</u> plaintiffs' claims, like those of the <u>Jackson</u> plaintiffs, are factually very diverse.  One of the <u>Petaccia</u> plaintiffs, for instance, alleges not only that he witnessed racial discrimination, was required to participate in it, and was fired in retaliation for opposing it, but also that he repeatedly informed Motel 6's district, regional, and national offices of the ongoing discrimination, to no avail.  Another <u>Petaccia</u> plaintiff, however, fails to allege either that she was retaliated against for opposing the alleged discrimination or any facts that would support a retaliation claim.  As in the <u>Jackson</u>

_____

[17]  In order to prove a claim for a racially hostile work environment, a plaintiff must "demonstrate that the actions of the defendants altered the condition of the workplace, creating an objectively abusive and hostile atmosphere."  <u>Edwards v. Wallace Community College</u>, 49 F.3d 1517, 1521 (11th Cir. 1995). We read section 1981, as amended by the Civil Rights Act of 1991, to encompass such a claim.  <u>See</u> <u>Vance v. Southern Bell Tel. & Tel. Co.</u>, 983 F.2d 1573, 1575 (11th Cir. 1993) (noting that the 1991 Act enlarged the scope of section 1981 to include post-hiring discrimination); <u>see</u> <u>also</u> <u>Dennis v. County of Fairfax</u>, 55 F.3d 151, 155 (4th Cir. 1995) (holding that section 1981, as amended, now covers "general conditions of employment, including incidents of racial harassment in the workplace"); <u>Johnson v. Uncle Ben's, Inc.</u>, 965 F.2d 1363, 1372 (5th Cir. 1992) ("Under § 1981 as amended by the [1991] Act, racial harassment and other discrimination in an employment relation occurring after contract formation is actionable.").

19

case, the only issue common to all the Petaccia plaintiffs is the question whether Motel 6 has a practice or policy of racial discrimination in providing public accommodations. For reasons explained below,[18] this issue is more important to the Petaccia plaintiffs' claims than it is to the Jackson plaintiffs' claims; we doubt, however, that the issue is predominant within the meaning of Rule 23(b)(3), because the issues in the class action that are subject to generalized proof and thus applicable to the proposed class as a whole will not predominate over those issues that are subject only to individualized proof.

As explained above, we find the February 21 communications order to have been an abuse of discretion, because it is clearly injurious and, with regard to the Petaccia plaintiffs, because the court's decision on certification of the Petaccia class was not and still may not be imminent. Certification of that class is still pending before the magistrate judge, ten months after the communications order was entered. We therefore grant the petition for mandamus and direct the district court to vacate the portion of the order allowing the Petaccia plaintiffs to advertise their claims and conduct mass mailings to Motel 6 employees.[19]

---

[18] See infra note 19; supra note 13.

[19] We note, however, that insofar as the district court's February 21 order authorizes the Petaccia plaintiffs to conduct mass mailings to Motel 6 employees, it authorizes inquiries and communications that would be allowable as a normal discovery matter, whether the Petaccia class is certified or not. In Faragher v. City of Boca Raton, 111 F.3d 1530 (11th Cir. 1997)(en banc), cert. granted, 66 U.S.L.W. 3157 (U.S. Nov. 14, 1997) (No.

20

## III.

For the foregoing reasons, we GRANT Motel 6's petition for mandamus relief. We direct the district court to decertify the <u>Jackson</u> class and vacate that part of the February 21 order allowing the <u>Jackson</u> plaintiffs to conduct preliminary class communications. We also direct the district court to vacate the portion of the February 21 order that authorizes the <u>Petaccia</u> plaintiffs to advertise their allegations and to communicate with Motel 6 employees.

PETITION GRANTED.

---

97-282), this Court held that "[a]n employer is directly liable for hostile work environment . . . harassment if the employer knew or should have known of the harassment and failed to take prompt remedial action," and that "[a] plaintiff. . . can prove an employer's knowledge by showing that the harassment was pervasive enough to charge the employer with constructive knowledge." <u>Id.</u> at 1538. To this end, the <u>Petaccia</u> plaintiffs could, as a normal discovery matter, propound interrogatories seeking the names and mailing addresses of all non-supervisory Motel 6 employees, and could communicate with and depose those employees, in order to ascertain whether the alleged hostile work environment was so pervasive that notice to higher management might be inferred.