[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 99-14220

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 30, 2001
THOMAS K. KAHN
CLERK

D. C. Docket No. 97-01823-CV-J-S

CHARLES J. PIAZZA, JR., an individual
and as a representative for a class of
persons similarly situated,

Plaintiff-Appellee,

versus

EBSCO INDUSTRIES, INC.,
COOPERS & LYBRAND, LLP, et al.,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Alabama

_____

**(November 30, 2001)**

Before CARNES, MARCUS and FARRIS[*], Circuit Judges.

MARCUS, Circuit Judge:

_____

[*]Honorable Jerome Farris, U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

This is an interlocutory appeal from a grant of class certification. Charles

Piazza ("Piazza"), a former employee of EBSCO Industries, Inc. ("EBSCO"), and

a former participant in the EBSCO Savings and Profit Sharing Trust Plan (the

"Plan"), brought this action against EBSCO, certain EBSCO directors, certain

trustees and fiduciaries of the Plan (together, the "EBSCO Defendants") and

Pricewaterhouse Coopers, LLP ("PwC"),[1] alleging violations of Alabama law and

the Employee Retirement Income Security Act, 29 U.S.C. § 1001-1461 ("ERISA").

The district court granted Piazza's motion for class certification, and, pursuant to

Fed. R. Civ. P. 23(b)(3), certified against all defendants a class of all persons who

are or have been Plan participants or beneficiaries from 1983 through the present.

PwC and the EBSCO Defendants argue on appeal that the district court abused its

discretion by certifying a class against them. We reverse certification of a class

against PwC, vacate certification of the class against the EBSCO Defendants, and

remand to the district court with instructions.

I.

The facts surrounding this appeal are straightforward. The Plan is funded by

employee contributions and fifteen percent of EBSCO's annual profits. Among

---

[1]Piazza originally named Coopers & Lybrand, LLP, PwC's predecessor in interest. For ease of reference, we will refer to both entities as "PwC."

other assets, the Plan also held EBSCO stock, which comprised 30% of the corpus by 1993. In 1994, the Plan sold the EBSCO stock back to EBSCO, based on a valuation by PwC. AmSouth Bank, the Plan trustee, hired PwC for this purpose. PwC delivered its report on January 31, 1994, and valued the stock at approximately $17 million. The sale was completed between March and June 1994.

Piazza was an EBSCO employee and Plan participant from 1988 until 1995. He retired in 1995 and withdrew his funds from the Plan in 1996. Piazza first learned of the 1994 stock sale from another EBSCO employee in November 1995. He also learned that some impropriety may have occurred in the valuation of EBSCO stock for the sale. Upon investigation, Piazza discovered that the EBSCO Defendants secretly operated competing companies.

Piazza filed suit on July 18, 1997, alleging that the EBSCO Defendants had undervalued the stock for the 1994 sale and pressured the trustee to undervalue the stock in prior years. From the outset, Piazza sought to certify a class and proceed with a class action suit. Piazza initially named only the EBSCO Defendants and PwC as defendants. He did not seek to join AmSouth until August 1998, near the close of discovery. The district court granted joinder in February 1999 and extended the discovery period.

Piazza moved for class certification pursuant to Fed. R. Civ. P. 23(b)(1), (2), and (3). Defendants vigorously opposed. On July 7, 1999, the district court held a class certification hearing. At the hearing, Piazza abandoned his earlier claim that the class should begin in 1959, the year the Plan was established, in favor of 1983, when the EBSCO Defendants began operating competing companies. On August 13, 1999, the district court issued an order certifying against all defendants a Rule 23(b)(3) class of all persons who were Plan participants or beneficiaries from 1983 through the pendency of the action.[2]

We granted the defendants' interlocutory motions to appeal class certification by order of October 27, 1999. See Fed. R. Civ. P. 23(f).

On February 8, 2000, the district court granted AmSouth's motion for summary judgment, holding that Piazza's claims against it were barred by the statute of limitations. The district court certified this order as a final judgment, and Piazza did not appeal in the time allotted. On April 3, 2000, we dismissed AmSouth's appeal of the class certification as moot.

II.

We review orders granting class certification for abuse of discretion. See

---

[2]Due to a clerical error, the original order stated that the class period began in 1993. A clarifying order was issued on August 25, 1999.

4

Andrews v. American Tel. & Tel. Co., 95 F.3d 1014, 1022 (11th Cir. 1996).

Whether the named plaintiffs have standing to assert their claims is a legal issue

subject to de novo review. See Wooden v. Board of Regents of Univ. Sys. of

Georgia., 247 F.3d 1262, 1271 n.9 (11th Cir. 2001).

Rule 23(a) sets out four requirements which must be satisfied before a class

can be certified. The Rule states:

> (a) Prerequisites to a Class Action. One or more members of a class
> may sue or be sued as representative parties on behalf of all only if (1)
> the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class; (3) the
> claims or defenses of the representative parties are typical of the
> claims or defenses of the class; and (4) the representative parties will
> fairly and adequately protect the interests of the class.

Id. These four requirements commonly are referred to as "the prerequisites of

numerosity, commonality, typicality, and adequacy of representation," and they are

designed to limit class claims to those "fairly encompassed" by the named

plaintiffs' individual claims. General Tel. Co. of S.W. v. Falcon, 457 U.S. 147,

156, 102 S. Ct. 2364, 2370, 72 L. Ed. 2d 740 (1982) (quoting General Tel. Co. of

N.W. v. E.E.O.C., 446 U.S. 318, 330, 100 S. CT.. 1698, 1706, 64 L. Ed. 2d 319

(1980)). Typicality, along with the related requirement of commonality, focuses

on whether a sufficient nexus exists between the legal claims of the named class

representatives and those of individual class members to warrant class certification.

5

See Washington v. Brown & Williamson Tobacco Corp., 959 F.2d 1566, 1569 n. 8 (11th Cir.1992); see also 7A C. Wright & A. Miller, Federal Practice and Procedure § 1764 (1986). Traditionally, commonality refers to the group characteristics of the class as a whole, while typicality refers to the individual characteristics of the named plaintiff in relation to the class. See Prado-Steiman v. Bush, 221 F.3d 1266, 1279 (11th Cir. 2000). Typicality also encompasses the question of the named plaintiff's standing, for "[w]ithout individual standing to raise a legal claim, a named representative does not have the requisite typicality to raise the same claim on behalf of a class." Id. "Adequacy of representation" means that the class representative has common interests with unnamed class members and will vigorously prosecute the interests of the class through qualified counsel. Andrews, 95 F.3d at 1023. These four requirements "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Prado-Steiman v. Bush, 221 F.3d at 1279 (11th Cir. 2000) (quoting Falcon, 457 U.S. at 157, n.13, 102 S. Ct. at 2370).

In addition to the requirements of Rule 23(a), before a class can be certified, at least one of the alternative requirements of Rule 23(b) must be satisfied.

Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d 999, 1005 (11th Cir.1997). The alternative requirements provided by Rule 23(b) are as follows:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(1)-(3). These alternative requirements "describe[] the additional elements which in varying situations justify the use of a class action." Fed. R. Civ. P. 23 advisory committee's note (1966 amend.).

A. PwC

PwC argues that the Rule 23(a) prerequisites were not met here because (1) commonality was defeated by the fact that plan participants live in thirty-seven states and therefore the laws of thirty-seven different states would have to be applied; (2) there is no typicality because Piazza cannot establish the reliance element necessary to prove each individual class member's claim; and (3) Piazza cannot serve as a class representative since he does not have standing because his claim is barred by the statute of limitations.

Because the question is dispositive in this case, we begin our analysis with Piazza's standing to raise the claim against PwC. Without individual standing to raise a legal claim, a named representative does not have the requisite typicality to raise the same claim on behalf of a class. See Prado-Steiman, 221 F.3d at 1279. It is by now clear that a class representative whose claim is time-barred cannot assert the claim on behalf of the class. See Carter v. West Publ'g Co., 225 F.3d 1258, 1267 (11th Cir. 2000) (reversing class certification because the named plaintiff, whose claim was time-barred, lacked standing to assert the claim); Great Rivers

8

Coop of S.E. Iowa v. Farmland Indus., Inc., 120 F.3d 893, 899 (8th Cir. 1997) ("Here, [the class representative] is not and cannot be a class member because his claim is time barred; consequently, he cannot represent the class."). If Piazza's claim is time-barred, he cannot assert the claim against PwC on behalf of the class, and it would not be necessary to reach PwC's other arguments. We turn, then, to the statute of limitations.

The claim against PwC is a professional negligence-accounting malpractice claim. Under Alabama law, claims for negligence are subject to a two-year statute of limitations. See Henson v. Celtic Life Ins. Co., 621 So. 2d 1268, 1274 (Ala. 1993). The statutory period of limitations for negligence actions, found at Ala. Code § 6-2-38, is two years from the date the injury occurred. Id. It is well settled under Alabama law that a negligence cause of action accrues when the plaintiff can first maintain the action, regardless of whether the full amount of damage is apparent at the time of the first injury. See Booker v. United American Ins. Co., 700 So. 2d 1333, 1339 (Ala. 1997).

The district court never made a finding as to when the claim against PwC accrued, but instead simply observed that the claim accrued "sometime after the delivery of the valuation to the trustees." The valuation on which the negligence claim is based was delivered to the Trustee on January 31, 1994, the EBSCO stock

was sold on March 10, 1994, and the sale of the stock was completed in June 1994. We need not resolve whether Piazza's cause of action accrued when the valuation was delivered, when the stock was sold, or when the sale of the stock was complete because, even if Piazza did not realize any injury until the sale was actually completed, his cause of action accrued by June 1994 at the latest. Piazza, however, did not initiate this professional negligence suit against PwC until July 18, 1997. Piazza does not dispute that he did not file suit until more than two years after his cause of action accrued, but he argues that the Alabama "discovery rule" tolls the statute of limitations. We are not persuaded.

The Alabama discovery rule tolls the statute of limitations for fraud claims, but not for negligence claims. See Henson, 621 So. 2d at 1274. Piazza argues that the discovery rule tolled the statute of limitations in this case because Alabama's tort of professional negligence is based on the tort of negligent representation as described in the Restatement (Second) of Torts § 552, which is a combination of fraud and negligence. The Alabama Supreme Court adopted Section 552 as the test for professional negligence in Boykin v. Arthur Andersen & Co., 639 So. 2d 504, 509-10 (Ala. 1994). Section 552 provides:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them

10

by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

Restatement (Second) of Torts §552 (1977).

On its face, Section 552 is cast in terms of negligence. It imposes liability for the breach of a duty, arising from a professional relationship, to exercise reasonable care. Indeed, the Alabama Supreme Court has treated professional negligence claims based on Section 552 as negligence claims. See Fisher v. Comer Plantation, Inc., 772 So. 2d 455 (Ala. 2000); Boykin, 639 So. 2d 504. Piazza cites no case, and we are not aware of any, to support the proposition that the tort of professional negligence sounds also in fraud.

11

Moreover, the Alabama Supreme Court has expressly rejected expansive readings of the discovery rule. In Travis v. Ziter, 681 So. 2d 1348 (Ala. 1996), the plaintiff sought to toll a statute of limitations on the ground that she had repressed memories of sexual abuse until they were "triggered" during therapy fifteen years later. As compelling as the facts were, the Alabama Supreme Court stated that "this Court will not apply the discovery rule unless it is specifically prescribed by the Legislature." 681 So. 2d at 1354; see also Garrett v. Raytheon Co., 368 So. 2d 516, 521 (Ala. 1979) (explaining that "as this Court is committed to the proposition that the legislature has the Inherent power to establish statutes of limitation, we have no other alternative than to leave it to the legislature to abrogate this rule and adopt a more equitable one should it see fit."). Here, Piazza has not offered any basis for expansively reading the discovery rule. In the absence of any compelling argument from Piazza, and considering the language of Section 552 and the Alabama Supreme Court's commitment to narrowly reading the discovery rule, we conclude that the discovery rule does not apply here and that Piazza's professional negligence claim is barred by the statute of limitations. Since Piazza's claim against PwC is time-barred, we hold that the district court abused its discretion in finding Piazza to be an adequate class representative. See Carter, 225 F.3d at 1263. Accordingly, we reverse the certification of the class against PwC.

12

B.  The EBSCO Defendants

On appeal, the EBSCO Defendants argue that the district court abused its discretion in certifying the class against them.  They argue that Piazza lacks standing to present some of the class's claims, that irreconcilable conflicts exist among the class members, and that it was an abuse of discretion to certify certain claims pursuant to Rule 23(b)(3), rather than Rule 23(b)(1).  We address these arguments below.

As an initial matter, however, we note that our analysis of the EBSCO Defendants' challenges to the class certification order is hampered by the lack of precision in the class certification order.  The district court certified the class "with respect to the claims against all defendants as such claims are stated in the June 30, 1999 amended complaint."  Although we read this to mean that the district court intended to certify all of the claims stated in the amended complaint against all of the defendants, we note that, prior to the class certification order, the district court had granted PwC's motion for summary judgment on several state law claims.  Moreover, when we turn to the amended complaint, it is difficult, if not impossible, to discern precisely which claims are asserted against the EBSCO Defendants, and therefore impossible to identify precisely the claims with respect to which the class was certified.

13

In his argument to this court, Piazza identifies three general claims against the EBSCO Defendants: (1) breach of fiduciary duty by operating competitor companies which lowered the value of EBSCO stock and diminished the profits EBSCO placed in the Plan from 1983 to the present; (2) breach of fiduciary duty through the sale of EBSCO stock from the Plan in 1994 at an unreasonably low price; and (3) breach of fiduciary duty by artificially lowering the value of the stock between 1983 and the 1994 sale. Each of these claims is said to arise under both § 502(a)(2) and § 502(a)(3) of ERISA. Given the lack of precision in the certification order and incorporated complaint, we will assume that the district court intended to certify each of these three general claims against the EBSCO Defendants under § 502(a)(2) and (3).[3] Since we find that it was an abuse of discretion to certify some of these claims, we vacate the certification of the class against the EBSCO Defendants and remand to the district court for a precise statement of the class claims, if any, which it may permit.

1. Lost Profits

The EBSCO Defendants argue that Piazza lacks standing to assert, on behalf of the class, the claim for breach of fiduciary duty by operating competing

---

[3]The EBSCO Defendants argue that most of these claims are inadequately stated in the complaint or not viable. We take no position on whether these claims are adequately stated or would survive a motion to dismiss in the district court.

companies from 1983 to the present. The heart of this claim is that the EBSCO Defendants' operation of competing companies diminished EBSCO's profits during that period and, consequently, reduced EBSCO's profit-sharing contributions to the Plan. This claim is asserted on behalf of all class members, and applies to the entire class period. Although the class period runs from 1983 to the present, Piazza was a Plan participant only from 1988 to 1996. Accordingly, EBSCO argues that Piazza lacks standing to assert a claim based on the operation of competing companies from 1983 to 1988 (before he was an EBSCO employee or Plan participant) or after 1996 (when he withdrew his funds from the Plan). While we agree that Piazza lacks standing to assert a claim based on the operation of competing companies either before or after his participation in the Plan, we do not believe that this prevents him from acting as a representative of the class of all Plan participants from 1983 through the pendency of the case.

The EBSCO Defendants argue, and we agree, that Piazza has a breach of fiduciary duty claim on this ground against the EBSCO Defendants only for the period when he was a Plan participant. The fiduciary duties which they are alleged to have breached arise under ERISA. ERISA requires fiduciaries to "discharge [their] duties with respect to the plan solely in the interest of the participants and beneficiaries," ERISA § 404(a), 29 U.S.C. § 1104(a), and requires plan

15

administrators to discharge their fiduciary duties "for the exclusive purpose of . . . providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1)(A)(i).

Furthermore, ERISA defines "participant" as

any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be able to receive any such benefit.

29 U.S.C. § 1002(7). ERISA does not include in the definition of "participant" a future employee. Plainly, the EBSCO Defendants did not owe Piazza a fiduciary duty before he became an EBSCO employee, and Piazza can have no claim for breach of that duty before it arose.

Moreover, under the terms of the Plan, Piazza's retirement distributions were determined only by the assets that were in the plan at the time of his retirement. Consequently, the fact that EBSCO's profit sharing contributions after his retirement may have been smaller than they would have been without the alleged breach of fiduciary duty cannot have had any effect on him whatsoever. Without such an effect, there is no "injury in fact" and Piazza lacks standing to raise a claim for the alleged breaches occurring after his retirement. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992) (To

16

satisfy the first element of "the irreducible constitutional minimum of standing . . . the plaintiff must have suffered an 'injury in fact'--an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.") (citations and quotation marks omitted).

Piazza therefore only has standing to assert this breach of fiduciary duty claim for breaches occurring from 1988 to 1996, when he was a Plan participant. The EBSCO Defendants argue that, since Piazza does not have standing to raise a breach of fiduciary duty claim against them for breaches that occurred before or after his participation in the Plan, he cannot represent a class making these claims on behalf of some of its members. We disagree.

Even though Piazza only has standing to assert this breach of fiduciary duty claim for the period of his participation in the Plan, he may still represent the class if his claim has the requisite typicality. It is beyond dispute that in order to have the requisite typicality to represent a class, a named plaintiff must have individual standing to assert the claim. Prado-Steiman, 221 F.3d at 1279. However, there is no similar requirement that "all putative class members share identical claims." Id. at 1279 n.14 (quoting Baby Neal v. Casey, 43 F.3d 48, 54 (3rd Cir. 1994)). In fact, typicality and commonality "may be satisfied even if some factual differences exist

17

between the claims of the named representatives and the claims of the class at large . . . [although] we do require that the named representatives' claims share the same essential characteristics as the claims of the class at large." Id. (citations and quotation marks omitted). In making this determination, we have concluded that "a strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences." Id.; see also Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984) (stating that "a sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory").

Although Piazza only has standing to assert this breach of fiduciary duty claim based on the operation of competing companies while he was a Plan participant, his claim has "the same essential characteristics as the claims of the class at large." Prado-Steiman, 221 F.3d at 1279 n.14. The breach of fiduciary duty claims of all class members are based on the EBSCO Defendants' practice of operating competing companies during the class period, reducing EBSCO's profits and, consequently, reducing EBSCO's profit-sharing contributions to the Plan. The class members' claims therefore arise from precisely the same practice and the legal issues are identical. Compare Kornberg, 741 F.2d at 1337. Their claims differ from Piazza's only in the particular time period in which the operation of

18

competing companies caused them injury. Although individual damage calculations may vary with the periods during which the different class members were Plan participants and the particular dates on which retired class members received their retirement distributions, the essential core of their claims does not vary. Piazza's claim is therefore altogether typical of the claims possessed by the class members; the factual differences between their claims and his are no barrier to allowing him to serve as class representative. Quite simply, this argument provides no basis for concluding that the district court abused its discretion by certifying a class against the EBSCO Defendants on this claim.

## 2. The 1994 Stock Sale

The EBSCO Defendants concede that the requirements of Rule 23(a) are met with regard to the claim for breach of fiduciary duty on the basis of their participation in the Plan's sale of the EBSCO stock at less than its true value. They argue, however, that the district court abused its discretion in its application of Rule 23(b) to this claim.[4] We agree.

A class action may be maintained only when it satisfies the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) and at least one

---

[4]Although the EBSCO Defendants do not appear to have presented this argument with respect to the lost profits claim, the argument and our analysis apply equally to that claim.

19

of the alternative requirements of Rule 23(b).  See Jackson, 130 F.3d at 1005.  The district court certified the class against the EBSCO Defendants pursuant to Rule 23(b)(3), which allows certification when common questions of law and fact predominate and a class action offers a superior method for fair and efficient adjudication.  The EBSCO Defendants argue that the district court abused its discretion by certifying the class under Rule 23(b)(3) rather than Rule 23(b)(1), which allows certification when the prosecution of separate actions by individual class members would create a risk that inconsistent adjudications would establish incompatible standards of conduct.  The subsection under which the class action is certified is significant to the EBSCO Defendants because Rule 23(c)(2) requires the court to allow class members an opportunity to opt out of class actions maintained under Rule 23(b)(3), but no such requirement applies to class actions maintained under Rule 23(b)(1).

The EBSCO Defendants do not contest the district court's determination that common issues predominate, arguing instead that a class action under Rule 23(b)(1) is an available and plainly superior method for the fair and efficient adjudication of this controversy.  The EBSCO Defendants contend that, since Piazza was not individually injured by the Plan's 1994 sale of the EBSCO stock, his only ERISA claim is pursuant to ERISA § 502(a)(2), "for appropriate relief" to

the Plan for alleged breaches of fiduciary duty. Since a § 502(a)(2) claim is brought on behalf of the Plan, any recovery will benefit the Plan and, indirectly, the members of the class. Allowing individuals to opt out of the class action and pursue their own suits under ERISA § 502(a)(2), the EBSCO Defendants argue, would require them to defend against multiple suits, each asserting what is actually one claim belonging to the Plan. Clearly, the EBSCO Defendants assert, the requirements of Rule 23(b)(1) are met, since "inconsistent or varying adjudications with respect to individual members of the class" on this claim would "establish incompatible standards of conduct" for them. See Rule 23(b)(1)(A). The EBSCO Defendants conclude, therefore, that the possibility of such prejudice to them, and the lack of any countervailing benefit[5] to be obtained from certification of the class under Rule 23(b)(3), renders it an abuse of discretion for the district court to have certified the class on the ERISA § 502(a)(2) claim under Rule 23(b)(3) rather than Rule 23(b)(1).

Under these particular circumstances, where the EBSCO Defendants have identified potential prejudice arising from certification of the ERISA § 502(a)(2) claim under Rule 23(b)(3), certification under Rule 23(b)(1) is also available, and

---

[5]Piazza offers no basis for preferring certification of the ERISA § 502(a)(2) claim under Rule 23(b)(3) to certification under Rule 23(b)(1).

Piazza has identified no basis for preferring certification of this claim under Rule 23(b)(3) to certification under Rule 23(b)(1), it was an abuse of discretion to certify the § 502(a)(2) claim[6] under Rule 23(b)(3).  No other court has certified a Rule 23(b)(3) class for a § 502(a)(2) claim, although such claims have been allowed to proceed as class actions under subsections (b)(1) and (b)(2).  See, e.g., Bradford v. AGCO Corp., 187 F.R.D. 600, 605 (W.D. Mo. 1999) (Rule 23(b)(2)); Gruby v. Brady, 838 F. Supp. 820, 828 (S.D.N.Y. 1993) (Rule 23(b)(1)); Specialty Cabinets & Fixtures, Inc. v. American Equitable Life Ins. Co., 140 F.R.D. 474, 479 (S.D. Ga. 1991) (Rule 23(b)(1)) ("Because individuals may bring class actions to remedy breaches of fiduciary duty only on behalf of the plan, rather than themselves, the court cannot allow absent participants or beneficiaries to opt out of

---

[6]As we have observed, our analysis in this section applies equally to the lost profits claim.  It therefore would be an abuse of discretion to certify pursuant to Rule 23(b)(3) a class on a § 502(a)(2) claim for breach of fiduciary duty by operating competing companies and thereby reducing EBSCO's profit-sharing contribution to the Plan.

22

this class. The right to recovery, after all, belongs to the plan.") (citation omitted).[7]

### 3. Pre-Sale Undervaluation

The EBSCO Defendants proffer two broad arguments against the district court's certification of the claim that they breached their fiduciary duties through their roles in the alleged undervaluations of the EBSCO stock in the years preceding the 1994 sale. First, they say that Piazza has no standing to raise this claim because he suffered no injury in fact from this alleged breach of their fiduciary duties. Second, they contend that there are irreconcilable conflicts among the members of the class. Both of these arguments have at their heart the assertion that any pre-sale undervaluations only harmed those who retired while that undervaluation was in effect and actually benefitted those who retired later. Since we agree with this idea, and that Piazza does not have standing as a consequence, we need not address the EBSCO Defendants' conflicts argument to

---

[7]We note, however, that, in addition to presenting a basis for relief to the plan under ERISA § 502(a)(2), Piazza may also have raised the EBSCO Defendants' participation in the 1994 stock sale as a basis for appropriate individual relief under § 502(a)(3). Separate suits by individual class members seeking these individual remedies do not appear to threaten the EBSCO Defendants with the same possibility of conflicting or duplicative recoveries. Accordingly, the EBSCO Defendants' argument against the certification of a Rule 23(b)(3) class does not apply to claims for individual remedies. Although we believe it was an abuse of discretion to certify the § 502(a)(2) claims for relief to the plan under Rule 23(b)(3), no similar abuse of discretion would occur in the certification under that subsection of claims under § 502(a)(3) for individual remedies. (We, of course, take no position in this opinion on whether such a claim, or any other claim raised by Piazza, would survive a motion to dismiss.)

reach our conclusion that the district court abused its discretion by certifying a class on this claim.

Each Plan participant's retirement distribution is calculated as a share of the value of the assets in the Plan when that participant retires. Up until the sale of the Plan's EBSCO stock in 1994, the Plan's trustee, AmSouth, calculated a value for the Plan's EBSCO stock each year and used that value as a basis for determining the retirement distributions for those who retired during that year.[8] If the Plan's EBSCO stock was undervalued when a participant retired, that participant would receive less than he would have if his retirement distribution had been calculated based on the true value of the Plan's assets. Any participant who retired while the Plan owned EBSCO stock, therefore, would be injured by an undervaluation of the EBSCO stock at the time of his retirement.

It should be obvious that Plan participants are not injured by any undervaluation that occurs after they retire, since their retirement distributions are not affected by the value of the Plan's assets after they retire. Less obvious, however, is the fact that Plan participants are actually benefitted by undervaluations that precede their retirement, so long as the stock remains in the

---

[8]For the 1994 stock sale, AmSouth hired PwC to conduct a valuation of the EBSCO stock.

Plan. This is so since undervaluations reduce the size of the distributions to participants who retire when the undervaluation is in effect, and therefore leave more assets in the Plan for later retirees.[9]

After the stock sale, the Plan no longer held any EBSCO stock, holding in its place the funds which had been used by EBSCO to purchase the stock (or other assets that the Plan purchased with those funds). Post-sale retirees, like Piazza, would have been harmed by the sale of the EBSCO stock at an improperly low price, because that left the Plan with a less valuable pool of assets than it had before the sale. They would not, however, have been harmed by any earlier undervaluations. In fact, pre-sale undervaluations of the EBSCO stock would have reduced the value of retirement distributions paid to pre-sale retirees, leaving more

---

[9]The following simple illustration may clarify this point: Assume that there are ten participants in the Plan, each having a right to a pro-rata share of the Plan's assets upon retirement. Assume also that the Plan holds $100,000 in cash and 1,000 shares of EBSCO stock. Suppose also that the EBSCO stock has a true value of $100 per share. The Plan's assets would be worth $200,000 ($100,000 in cash and $100,000 in stock) and each participant's pro rata share would be $20,000. Thus, if five participants retire, their retirement distributions should total $100,000. Paying their distributions from the Plan's liquid assets (the cash) leaves the Plan with only the 1,000 shares of EBSCO stock (worth $100,000).

If, however, the stock is falsely undervalued, at $500 per share, then the Plan would only appear to have $150,000 in assets. The five retirees would receive only $15,000 each, rather than $20,000, and remove only a total of $75,000. Their retirement would leave the plan with $25,000 in cash and the 1,000 shares of EBSCO stock -- $25,000 more than it would have if the stock had been properly valued. As this simple illustration demonstrates, later retirees are benefitted, rather than harmed, by earlier undervaluations because earlier undervaluations leave later retirees with rights to a share of a larger pool of assets.

25

assets in the Plan than if their retirement distributions had been based on the true value of the Plan's EBSCO stock, and actually increasing the value of distributions to later retirees.

Since Piazza was not injured by the alleged pre-sale undervaluations (which, if anything, increased his retirement distributions), he lacks standing to raise a claim based on the pre-sale undervaluation of the EBSCO stock.[10]  See Lujan, 504 U.S. at 560, 112 S. Ct. at 2136 (As we have noted, to satisfy the first element of "the irreducible constitutional minimum of standing . . . the plaintiff must have suffered an 'injury in fact'--an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.") (citations and quotation marks omitted).  It therefore was an abuse of discretion for the district court to certify a class represented by Piazza against

---

[10]In this way, this breach of fiduciary duty claim differs from the lost profits claim. Piazza has standing to raise a claim that the EBSCO Defendants breached their fiduciary duties by operating competing companies, thereby reducing EBSCO's profit-sharing contributions to the Plan while he was a participant.  That claim was typical of the lost profit claims possessed by other members of the class; although the other members' claims may have covered different periods, they all suffered the same harm in the same way from the same course of conduct.  The pre-sale valuations, however, were routine matters carried out by the Plan's trustee, AmSouth. They differed in kind from the 1994 stock sale, which was carried out on the basis of a singular valuation by PwC conducted specifically for the sale.  Piazza's claim based on the sale of the Plan's EBSCO stock, allegedly based on an undervaluation produced by PwC, is not typical of the claims possessed by those who retired prior to the sale and received reduced distributions because of AmSouth's alleged undervaluation of the stock owned by the Plan.  See Prado-Steiman, 221 F.3d at 1279 ("[W]e do require that the named representatives' claims share 'the same essential characteristics as the claims of the class at large.'").

26

the EBSCO Defendants on the claim that they breached their fiduciary duties by undervaluing EBSCO stock between 1983 and the 1994 stock sale. Prado-Steiman, 221 F.3d at 1279 ("[T]here cannot be adequate typicality between a class and a named representative unless the named representative has individual standing to raise the legal claims of the class.").

III.

In sum, we reverse the certification of the class against PwC. We vacate the certification of the class against EBSCO and remand for further proceedings consistent with this opinion.[11] As part of the proceedings on remand, the district court must clarify with particularity which class claims, if any, it intends to certify against the EBSCO Defendants.

REVERSED IN PART, VACATED and REMANDED IN PART.

---

[11]Although the EBSCO Defendants do not raise the issue, we are also concerned that the adequacy requirement may not be met because Piazza's legal representation may not be adequate. See Falcon, 475 U.S. at 157 n. 13, 102 S. Ct. at 2370 (adequacy of representation includes concerns about competency of class counsel). The district court did not expressly consider whether Piazza's counsel impacts the adequacy requirement. While we take no position as to any outcome, we urge the district court to consider, on remand, whether the representation is adequate.