**Motisola Malikha ABDALLAH, Gregory Allen Clark, Linda Ingram, and Kimberly Gray Orton, Individually and as Class Representatives, Plaintiffs,**

v.

**The COCA–COLA COMPANY, Defendant.**

**No. Civ.A. 1:98–CV–3679–RWS**

United States District Court,
N.D. Georgia,
Atlanta Division.

May 14, 1999.

Jeffrey O. Bramlett, Homer Lamar Mixson, Jushua F. Thorpe, Bondurant, Mixson & Elmore, Atlanta, GA, James E. Voyles DeVille, Milhollin & Voyles, Marietta, GA, Cyrus Mehri, phv Pamela Coukos, phv Mehri, Malkin & Ross, Washington, D.C., for plaintiffs.

Robert Allan Boas, Elizabeth Finn Johnson, The Coca–Cola Company, Atlanta, GA, William A. Clineburg, Jr., Larry Dean Thompson, Michael Wayne Johnston, Shelly Yvonne Sharp, King & Spalding, Atlanta, GA, R. Lawrence Ashe, Jr., Paul, Hastings, Janofsky & Walker, Atlanta, GA, for defendants.

## MEMORANDUM OPINION & ORDER

STORY, District Judge.

Plaintiffs brought this class action discrimination lawsuit alleging that Defendant The Coca–Cola Company ["Coca–Cola"] systematically discriminates against African–American employees with regard to employee evaluations, compensation, promotions, and job placement within the corporation's divisions. (Compl. at ¶ 3.) Before the Court is Plaintiffs' Motion for Leave to Interview Prospective Class Members [11–1]. After reviewing the entire record and considering all arguments of the parties, this Court enters the following Order.

### I. Factual Background

Local Rule 23.1(C)(2) places restrictions upon communications between the parties and potential class members in actions where certification is sought under Rule 23(b)(3) and provides, in pertinent part, as follows.

> (a) Between the date of filing the complaint and the expiration of the time within which exclusion requests may be filed pursuant to Fed.R.Civ.P. 23(c)(2), all parties and their counsel are forbidden to communicate with prospective class members regarding the substance of the lawsuit, except as specifically permitted by section (c) below or by order of the court. The prohibition contained herein shall terminate if an order is entered denying the class certification motion.

> (b) Neither the parties nor their counsel may solicit prospective class members either to participate or not to participate in the action as members of the class, except pursuant to communications approved in advance by the court.

The Court placed these restrictions on such communications because of the "inherent risk" that a potential class member's election to participate or not participate in the class action "may, in the absence of court regulation of communications regarding the class action, not be based on a complete and bal-

anced presentation of the facts." Local Rule 23.1(C)(1).

## A. Communications Between the Parties and Potential Class Members to Date.

### 1. Plaintiffs and Their Counsel.

Plaintiffs' counsel have directly spoken with almost 100 potential class members who contacted them after the Complaint was filed. Indirectly, Plaintiffs have communicated with potential class members by: (1) speaking freely about the substance of the lawsuit with newspaper reporters; and (2) providing a copy of the Complaint along with the names, addresses, and telephone numbers of Plaintiffs' counsel to a third party for posting on a website.

*a. Telephone Contact.* Plaintiffs' counsel have received telephone calls, e-mails, faxes from almost 100 prospective class members. (Pls.' Br. at 1–2.) In response, firm employees have informed these individuals that court rules prohibit counsel from discussing the substance of the lawsuit or giving advice related thereto. However, Plaintiffs' counsel have requested the following information from callers: (1) name; (2) home address; (3) home, office, pager, and cellular phone numbers; (4) whether the employee could be reached at work; (5) current or last Coca–Cola job title and pay grade, division, department, and Coca–Cola corporation; (6) whether the individual was calling concerning race discrimination; (7) the individual's race. (Pls.' Ex. A.)

*b. Website.* Plaintiffs provided the Complaint and the exhibits thereto that contain statistics regarding the alleged discrimination to a third party who posted these items on a website. (Def.'s Ex. A.) The home page of the website contains an index of the Complaint and instructs viewers to contact Plaintiffs' Washington, D.C. counsel "[f]or more information and to obtain exhibits not provided on this website . . . ." (Def.'s Ex. A.) The page had received 1538 hits by 3:00 PM on April 23, 1999. (Def.'s Ex. A.)

*c. Newspaper Articles.* The Atlanta Journal–Constitution has printed six articles regarding this lawsuit in the last four weeks. Two of those articles simply compile information from documents filed in the case, and another summarizes Coca–Cola CEO M. Douglas Ivester's position as stated in the April 28 e-mail. But the other three articles are the product of in-depth interviews with the named plaintiffs and Plaintiffs' counsel. A May 2, 1999 article profiles the career of Plaintiffs' Washington, D.C. counsel Cyrus Merhri, including his involvement in a class action discrimination suit against Texaco that led to a 176 million settlement for over 100 plaintiffs. (Def.'s Ex. C.) Merhri explains in the article that he only takes "solid," "well-rounded," "viable" cases that have a public policy dimension to them. (Def.'s Ex. C.) On April 24, an article discussed the Complaint allegations and gave a detailed account of Plaintiff Abdallah's contentions regarding Coca–Cola's failure to promote her to the position of administrative assistant. (Def.'s Ex. E.) Another April 24 article contains a detailed account of Plaintiff Clark's allegations and explains how a group of African–American Coca–Cola employees began the process of filing this lawsuit. (Def.'s Ex. G.)

### 2. Coca–Cola's Contacts.

*a. E–Mails.* Ivester communicated with putative class members regarding the substance of the lawsuit by sending all Coca–Cola associates in the United States two e-mails discussing the Complaint allegations. In an April 23, 1999 e-mail, Ivester assured employees that Coca–Cola did not tolerate discrimination and that the lawsuit was "without merit," although he and members of management were taking the allegations seriously. (Pls.' Ex. C.) He then concluded by promising that he and his management team would "do the right thing." (Pls.' Ex. C.)

In an April 28 e-mail, Ivester first explained that the lawsuit was "troubling" to him because Coca–Cola had always endeavored to treat all of its employees fairly. (Pls.' Ex. B.) He then denied the allegation that Coca–Cola systematically discriminates against African–Americans and described the Complaint as containing "significant errors of fact . . . which we will address in our response to the complaint." (Pls.' Ex. B.) Ivester identified programs within the corporation designed to increase Coca–Cola's efforts to develop African–American associates. In

conclusion, Ivester assured all Coca–Cola associates that he was "taking this very seriously" and was "committed to ensuring that [Coca–Cola] operates in a fashion consistent with [its] leadership position around the world." (Pls.' Ex. B.)

*b. Conferences with Senior–Level African–American Managers.* Ivester met with senior African–American associates soon after the Complaint was filed "to get their opinions on the circumstances that have led to this serious litigation." (Pls.' Ex. B.)

## II. Discussion

### A. The Court's Authority to Impose Limitations Upon Communications with Potential Class Members.

#### 1. *Gulf Oil Co. v. Bernard.*

Both parties seek a declaration by this Court that Local Rule 23.1(C) is invalid under the U.S. Constitution and the Federal Rules of Civil Procedure because of its blanket prohibition on all communication between parties and putative class members where prior approval from the Court has not been sought. Precedent that is binding on this Court supports such a finding. *See, e.g. Gulf Oil Co. v. Bernard,* 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981) (affirming Fifth Circuit opinion, holding that district court exceeded bounds of Federal Rule of Civil Procedure 23 by imposing blanket prohibition on communication by parties and counsel with potential class members absent prior court approval, refusing to rule whether same order violated First Amendment); *Bernard v. Gulf Oil Co.,* 619 F.2d 459 (5th Cir.1980), *aff'd, Gulf Oil Co. v. Bernard,* 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981) (finding district court's blanket prohibition invalid under Rule 23 and unconstitutional as prior restraint on expression under First Amendment); *Kilgo v. Bowman Transp., Inc.,* 88 F.R.D. 592 (N.D.Ga.1980) (citing *Bernard,* concluding that application of local rule similar to Rule 23.1(C) that required court approval prior to communications was unconstitutional prior restraint).

But the same courts have recognized that district courts are not stripped of all authority to control communications between the parties and putative class members; instead, the Supreme Court and the Fifth Circuit opinions in *Gulf Oil* make it exceedingly clear that district courts may enter an order prohibiting class communications that will likely cause imminent and irreparable injury to one of the parties. This authority is, however, limited by the Federal Rules of Civil Procedure and the U.S. Constitution. With regard to the federal rules, the Supreme stated as follows in *Gulf Oil:*

> [A]n order limiting communication between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties. Only such a determination can ensure that the court is furthering, rather than hindering, the policies embodied in the Federal Rules of Civil Procedure, especially Rule 23.

452 U.S. at 101–102, 101 S.Ct. at 2200–2201 (footnotes omitted). The Fifth Circuit set forth similar guidelines to ensure that district courts do not violate the First Amendment.

> [A] prior restraint is only justified in exceptional circumstances and by a showing of direct, immediate, and irreparable harm. Whether such a showing can be made may be affected by a host of factors: the occurrence of misconduct or the threat of it, the composition and size of the class, the nature of the claim, the historical policies of the district court in administering class actions, the identity, experience and standards of the lawyers, the mores of the bar, the necessity for discovery and many others.

619 F.2d at 476. In addition, the court explained that limitations on communications with the putative class must be narrowly drawn to have the least impact on the parties' First Amendment freedoms.[1] *Id.*

---

1. Plaintiffs cite two district court cases for the proposition that *Gulf Oil* only applies to communications between Plaintiffs and potential class members so that Local Rule 23.1(C) may be fully enforced against Coca–Cola. *See Bower v. Bunker Hill Co.,* 689 F.Supp. 1032, 1033 (E.D.Wash. 1985) (citing *Resnick* and concluding that *Gulf Oil* limitations do not apply to communications

■ Based on the foregoing cases and Federal Rule of Civil Procedure 23(d), the court is authorized to enter this Order. Therefore, the Court will not address the constitutionality of Local Rule 23.1(C). "[A] federal court should not decide federal constitutional questions where a dispositive non-constitutional ground is available." *Bernard*, 619 F.2d at 478 (Tjoflat, J., concurring) (*quoting Hagans v. Lavine*, 415 U.S. 528, 547, 94 S.Ct. 1372, 1384, 39 L.Ed.2d 577 (1974)).

### 2. Recent Eleventh Circuit Authority.

The Eleventh Circuit recently applied these rules to address the propriety of court orders authorizing communications between Plaintiffs and potential class members prior to class certification in *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999 (11th Cir. 1997). The district court in *Jackson* issued an order allowing Plaintiffs to: (1) establish a 1–800 number to which potential class members could call; (2) publish notices of the litigation in publications nationwide and solicit information about potential class members and their alleged experience with discrimination at Motel 6; (3) respond to requests for information from those who responded to the advertisement or called the 1–800 number; (4) distribute mass mailing to Motel 6 employees soliciting information regarding the alleged discriminatory practices at Motel 6; and (5) communicate ex parte with anyone who knew of the alleged discrimination, except for Motel 6 management or supervisory employees. *Id.* at 1002. Finding that the trial court abused its discretion, the Eleventh Circuit vacated the portion of that order that allowed the plaintiffs to publish notices in nationwide publications and conduct mass mailings to Motel 6 employees. *Id.* at 1008.

The Eleventh Circuit began its discussion by stating as follows.

> While we cannot say that orders authorizing communication with potential class

members may never precede class certification, district courts must strive to avoid authorizing injurious class communication that might later prove unnecessary. An order authorizing class communications prior to class certification is likely to be an abuse of discretion when (1) the communication authorized by the order is widespread and clearly injurious and (2) a certification decision is not imminent or it is unlikely that a class will in fact be certified. In such circumstances, the danger of abuse that always attends class communications—the possibility that plaintiffs might use widespread publication of their claims, disguised as class communication, to coerce defendants into settlement—is not outweighed by any need for immediate communications.

*Id.* at 1004. Applying this rule, the Eleventh Circuit concluded that the district court abused its discretion by issuing an order that: (1) allowed advertisements and mass mailings that were "nationwide in scope" and "surely causing serious and irreparable harm to Motel 6's reputation and to its relationship with its employees;" and (2) was issued almost six months prior to the court's certification decision.

> With this discussion of the applicable law in mind, the Court considers Plaintiffs' and Defendant's requests for limitations on their communications with potential class members.

### B. Restrictions on Communications.

As an initial matter, the Court notes that the second factor in the *Jackson* abuse of discretion test is satisfied in this case because, as the parties concede, the certification decision will not be made at any time in the near future. The Court's analysis thus focuses on the first factor, under which the Court may not authorize any communications between the parties and potential class members that are widespread or clearly injurious.

---

between defendant and putative class); *Resnick v. American Dental Ass'n,* 95 F.R.D. 372, 376 (N.D.Ill.1982) (concluding that principles of Gulf Oil "obviously do not apply to protect communications to class members by opposing counsel"). However, the Supreme Court's opinion clearly addresses communications between all parties

and potential class members, as it should. As the text of Local Rule 23.1(C) recognizes, there are dangers inherent in allowing either plaintiffs or defendants to communicate with the putative class. These dangers should be weighed against the First Amendment rights of both parties and limitations should be imposed accordingly.

### 1. Plaintiffs' Contacts with Potential Class Members.

*a. Direct Contact.* Plaintiffs request a court order that permits them and their counsel to: (1) discuss the merits of the suit with potential class members who contact them; (2) determine whether potential class members possess any evidence relating to the Complaint allegations; (3) prepare affidavits or other testimony in support of class certification or the merits of the case; and (4) discuss with potential class members the possibility of representation by Plaintiffs' counsel and provide legal services to them. Coca–Cola seems to request that Plaintiffs' communication be restricted to the questions they have asked in the past, except that the questionnaire form should be modified to: (1) remove the question of whether current employees may be contacted at work; and (2) add a question inquiring whether callers are management or supervisory employees. Coca–Cola also argues that Plaintiffs and their counsel should be prohibited from contacting any Coca–Cola employee while at work.

■ The Court finds that Plaintiffs and their counsel are entitled to speak freely about this lawsuit with any potential class member that contacts them. Even though the class had not been certified in *Jackson,* the Eleventh Circuit let stand that portion of the district court's order that authorized Plaintiffs' "inquires and communication that would be allowable as a normal discovery matter, whether the ... class is certified or not." *Id.* at 1008 n. 19 (citations omitted). Such communications, when initiated by potential class members and not Plaintiffs' counsel, are neither widespread nor injurious and the Court therefore permits Plaintiffs to: (1) discuss the merits of the suit with potential class members who contact them; (2) determine whether that potential class member possesses any evidence relating to the Complaint allegations; (3) prepare affidavits

or other testimony in support of class certification or the merits of the case; and (4) discuss with potential class members the possibility of representation by Plaintiffs' counsel and of providing legal services to them.

Coca–Cola would have this Court prohibit Plaintiffs and their counsel from contacting employees "deemed to be represented by the Company's counsel," which purportedly include: (1) supervisory and managerial employees; (2) any employees whose acts or admissions could be attributed to Coca–Cola; (3) employees involved in defending the action; and (4) those likely to have privileged information. (Def.'s Br. at 20.) As Coca–Cola points out, the Georgia Bar Association prohibits ex parte communications between a lawyer and the opposing party, which includes communications between a plaintiff's lawyer and representatives of the defendant corporation. *See* State Bar of Georgia Handbook, State Bar of Georgia Formal Advisory Opinion No. 87–6 (87–R2). But it is also true that upper level employees of Coca–Cola have a right to bring a discrimination claim against their employer. Therefore, to the extent that these employees wish to pursue employment claims against Coca–Cola, they may communicate freely with Plaintiffs and their counsel. However, communications concerning any other matters relevant to this lawsuit—including but not limited to privileged information—are not permitted.[2]

Coca–Cola's request that Plaintiffs be restricted from asking potential class members whether they may be contacted at work is denied. However, Plaintiffs are prohibited from contacting Coca–Cola employees at work unless the employee has retained Plaintiffs' counsel.

*b. The Website.* Coca–Cola seeks a court order requiring Plaintiffs to post the term "ADVERTISEMENT" on the home page of the website in a prominent position along with a warning to Coca–Cola supervisors and managers that they should not contact Plain-

---

**2.** Coca–Cola seeks an Order that requires Plaintiffs to (1) produce copies of the intake forms completed by employees at their counsel's law firm and (2) make these employees available for interviews. Such an order may violate the work product doctrine and would potentially intimidate prospective plaintiffs. Coca–Cola's request is therefore denied.

tiffs or their counsel. In addition, Coca–Cola requests that the website include a warning to all employees that they should not reveal information protected by the attorney-client privilege or the work-product doctrine.

■ In light of *Jackson*, this Court concludes that the website should be purged of the Complaint, its exhibits, and the referral to Plaintiffs' counsel. There can be no doubt that this website posting is even more widespread than the nationwide advertisements and mass mailings at issue in *Jackson* because it can be accessed around the world. The danger therefore exists that Plaintiffs "might use widespread publication of their claims, disguised as class communications, to coerce defendants into settlement . . . ." *Id.* Moreover, like the notices in nationwide publications and mass mailings that described the plaintiffs' allegations and contained updates of the litigation in *Jackson*, the website in the case sub judice is "surely causing serious and irreparable harm to [Coca–Cola's] reputation and to its relationship with its employees." *Id.* at 1004.

Plaintiffs claim that they do not control the website, but they concede the fact that they provided the materials posted on the site and that the website owner would likely make any modifications they requested. The Court therefore orders Plaintiffs to earnestly request that the Complaint, its exhibits, and the referral be removed from the website.

### 2. Defendant's Communications with Potential Class Members.

Plaintiffs seek a court order that would require Coca–Cola to: (1) in all company-wide communications about this suit, inform employees that the views expressed by Coca–Cola are simply that and provide the phone number of Plaintiffs' counsel so employees can inquire as to their position; (2) limit communications about this suit with potential class members to managerial employees whose acts or omissions may result in liability for Coca–Cola in this suit. In addition, Plaintiffs argue that Coca–Cola should issue a corrective notice to the class that cures any prejudicial effects caused by Coca–Cola's previous communications.

Coca–Cola contends that it should be permitted to communicate with all of its employees about this case, assuring the Court that it will not seek to mislead or discourage potential class members from participating in this action. In addition, Coca–Cola requests permission to communicate with all current management and supervisory employees whose duties and responsibilities make them necessary to the defense of this case. Such employees include, for examples, Human Resources personnel, legal staff, management, and supervisors who participated in the challenged employment decisions.

Coca–Cola has not given the Court any reason to suspect that it will attempt to mislead its employees and coerce them into non-participation in this case. But simple reality suggests that the danger of coercion is real and justifies the imposition of limitations on Coca–Cola's communications with potential class members. As the Eleventh Circuit explained in *Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193, 1203 (1985), "[u]nsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal. The damages from misstatements could well be irreparable." *See also Bower v. Bunker Hill Co.*, 689 F.Supp. 1032, 1033 (E.D.Wash. 1985) (recognizing "extreme potential for prejudice to class members' rights" if defendant was permitted to discuss suit with class members). Regardless of whether these communications occur before or after class certification, the effect is still the same, as the Eleventh Circuit must have recognized in *Jackson* when it severely restricted district courts' authority to authorize pre-certification communication with the putative class. The Court therefore imposes the following limitations on Coca–Cola's communications with potential class members.

■ *a. Ivester's E–Mails to All U.S. Associates.* There is no indication that Ivester

intended to pressure potential class members into nonparticipation in this lawsuit when he issued the two e-mails to Coca–Cola's associates. But there is an inherent danger that these types of internal communication could deter potential class members from participating in the suit out of concern for the effect it could have on their jobs. However, banning all such communication is a draconian measure because the danger of coercion can be abated easily. Coca–Cola may continue to share its views about this lawsuit with its employees, but all such communications must contain the following language: "The foregoing represents Coca–Cola's opinion of this lawsuit. It is unlawful for Coca–Cola to retaliate against employees who choose to participate in this case." *See Shores v. Publix Super Markets, Inc.,* No. 95–1162–CIV–T–25(E), 1996 WL 859985 (M.D.Fla. Nov. 25, 1996) (requiring corporate employer to include similar information in internal communications to employees regarding class action discrimination lawsuit).[3]

Citing *Publix,* Plaintiffs argue that Coca–Cola must issue a curative notice to the potential class members as a result of Ivester's previous e-mails. However, the need for such a notice in *Publix* arose because the defendant employer created a hostile atmosphere for employees associated with the class and transmitted internal communications to members of the class with the intention of discouraging them from participating. *Id.* at *1–2. The e-mails that Ivester has sent to his employees to date pale in comparison and do not justify requiring Coca–Cola to issue a curative notice.

█ *b. Direct Communication with African–American Employees.* Coca–Cola is prohibited from discussing this lawsuit directly with potential class members, except to the extent it needs to speak with managerial employees to investigate the acts, omissions, and statements they committed that may expose Coca–Cola to liability in this action. But these conversations must be limited to that specific topic. *See Publix,* 1997 WL 714787 at *4 (imposing same restriction on defendant employer's communications with employee class members); *Hampton Hardware, Inc. v. Cotter & Co., Inc.,* 156 F.R.D. 630 (N.D.Tex.1994) (prohibiting defendant from discussing lawsuit with any members of class because such communication would be "rife with the potential for confusion and abuse given [the defendant's] interest in the suit").

### 3. Media Communications.

█ This Court will not limit in any manner the parties' right to speak with the media regarding the substance of this lawsuit, so long as no attempts are made by either side to overtly solicit participation or nonparticipation by potential class members. *See In re School Asbestos Litigation,* 842 F.2d 671, 684 (3rd Cir.1988) (striking down limitations on defendant's communication through mass media while upholding limitations on direct communications to members of plaintiff class); *Publix,* 1997 WL 714787 at *1 ("The Court does not intend to examine each public communication to determine its accuracy, fairness or bias, preferring to leave those determinations to the marketplace of ideas. Despite the fact that class members are exposed to such public communication, the Court will not place any restrictions on Publix's public communications.")

**SO ORDERED.**

---

3. In January of 1997, the district court in *Publix* imposed new restrictions on the defendant employer's communications with class members for the purpose of executing a settlement agreement. These restrictions superceded those imposed in the November 25, 1996 Order, which the court vacated as a result. *Shores v. Publix Super Markets, Inc.,* No. 95–1162–CIV–T–25E, 1997 WL 714787, at *5 (M.D.Fla. Jan. 27, 1997).