EQUAL EMPLOYMENT OPPOR-
TUNITY COMMISSION, et
al., Plaintiffs,

v.

MORGAN STANLEY & CO.,
INC., et al., Defendants.

No. 01 Civ. 8421(RMB)(RLE).

United States District Court,
S.D. New York.

May 28, 2002.

Michelle A. Caiola, U.S. Equal Employment Opportunity Commission, New York City, for EEOC.

Parisis G. Filippatos, Outten & Golden, New York City, for Plaintiff–Intervenor.

Emily Nicklin, Kirkland & Ellis, Chicago, IL, for Defendant.

## MEMORANDUM OPINION & ORDER

ELLIS, United States Magistrate Judge.

### I. INTRODUCTION

On September 10, 2001, the Equal Employment Opportunity Commission ("EEOC") filed a complaint against Morgan Stanley & Co., Inc., and Morgan Stanley Dean Witter & Co. (collectively, "Morgan Stanley") alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e *et seq.* EEOC alleges that Morgan Stanley has engaged in a pattern or practice of discrimination against females who hold the positions of Associate, Vice–President, Principal, and Managing Director in the Institutional Equity Division by failing to fairly promote and compensate them and by discriminating against them in terms,

conditions, and privileges of employment. Before the Court is a motion by Morgan Stanley requesting clarification of the Court's oral ruling on March 8, 2002, regarding *ex parte* communications with class members and disclosure of cohort salary and promotion data to potential class members or claimants. For the reasons which follow, the Court **ORDERS** Morgan Stanley to comply with the safeguards enumerated herein before communicating with potential class members, and **DENIES** Morgan Stanley's request to limit disclosure of compensation data.

### II. BACKGROUND

#### A. Ex Parte Communications

At a conference on March 8, 2002, the Court ordered the EEOC to identify class members and witnesses, and ordered Morgan Stanley to obtain permission from the EEOC before having *ex parte* communications with identified class members. On March 15, 2002, the EEOC presented Morgan Stanley with a list of twenty-two claimants for whom it had some reason or evidence to believe would participate in the lawsuit. Morgan Stanley argues that the list is overbroad and seeks clarification on the Court's ruling on *ex parte* communications. Morgan Stanley maintains that the EEOC only has an attorney-client relationship with women who affirmatively joined the class or requested EEOC representation. Thus, Morgan Stanley argues that it is entitled to speak with current and former employees to prepare its defense.

EEOC asserts that it could not provide a more precise list of claimants because of incomplete records resulting from the events of September 11, 2001, and obstructionist withholding of contact information by Morgan Stanley. However, EEOC maintains that it will present statistical

evidence to prove its allegations for all women in the class, including ones who do not actively participate or request EEOC representation. Further, EEOC argues that it does not have to "jump through any hoops" to establish an attorney-client relationship, and Morgan Stanley should abide by the ruling on *ex parte* communications. EEOC asserts that *ex parte* communications with Morgan Stanley will scare potential class members from participating in the lawsuit and interfere with its right to fairly prosecute the case.

In a telephonic conference on April 12, 2002, the Court denied Morgan Stanley's request to limit the attorney-client protection to women who affirmatively joined the class or who requested EEOC representation. After reviewing the defendants' papers and considering their arguments, the Court found that all women defined in the class are to some degree represented by the EEOC. Morgan Stanley was ordered not to have *ex parte* communications with women who had affirmatively joined the lawsuit, and directed not to have communications with other members of the class without notice to the EEOC.

### B. Disclosure of Cohort Salary and Promotion Data

At the conference on March 8, 2002, the Court also denied Morgan Stanley's request for an "attorneys' eyes only" provision regarding cohort salary and promotion data. The Court ruled that the only class members who should view the data are those who in good faith can provide information of a comparative nature, including potential class members. Further, the Court ordered all potential and actual class members who view the data to sign a confidentiality agreement.

Morgan Stanley argues that the EEOC should not be permitted to share the data with potential class members, as opposed to actual class members or claimants. Morgan Stanley's concerns are two-fold. First, Morgan Stanley maintains that it has proprietary, privacy and institutional interests in narrowly limiting dissemination about compensation data. Second, Morgan Stanley maintains that potential class members, unlike claimants who are in a relationship of trust with the EEOC, are far less likely to respect the confidentiality of Morgan Stanley's compensation information. Therefore, the data will probably not remain confidential.

The EEOC argues that because women are afraid to come forward because of fear of retaliation, it needs to show them empirical evidence that they have been victims of discrimination. Further, many women have told the EEOC that they thought they were victims of discrimination, but lacked proof to confirm their suspicions because the compensation data is so guarded.

In a telephone conference on April 12, 2002, the Court denied Morgan Stanley's request to limit disclosure of compensation and promotion data to class members. The Court ruled that the EEOC can show potential class members comparison information that is relevant to prove their individual case. Further, all potential class members must sign a confidentiality agreement before viewing the data in question.

### III. DISCUSSION

#### A. Ex Parte Communications

The case law is not definitive regarding the moment when the EEOC enters into an attorney-client relationship with the members of the class it seeks to represent. *See, e.g., EEOC v. Johnson & Higgins, Inc.,* 1998 WL 778369, at *5–6 (S.D.N.Y. Nov.6, 1998); *Bauman v. Jacobs Suchard, Inc.,* 136 F.R.D. 460, 462 (N.D.Ill.1990)

(applying attorney-client protection to plaintiff in private action who filled out EEOC questionnaire); *Gormin v. Brown–Forman Corp.*, 133 F.R.D. 50, 53 (M.D.Fla.1990) (finding that the EEOC does not have an attorney-client relationship with aggrieved employees listed in the complaint). Moreover, the cases provide little guidance on the precise nature of the relationship between the EEOC and the members of the class it seeks to represent. On the one hand, the EEOC represents the interests of all members of the defined class when it acts to "vindicate the public interest in preventing employment discrimination." *Gen. Tel. Co. of the Northwest v. EEOC*, 446 U.S. 318, 326, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). On the other hand, the EEOC's lawsuit does not preclude a separate action by members of the class. *Id.* An aggrieved party may bring a separate, private action or intervene in the EEOC's enforcement action. *Id.* Even where the EEOC represents a class to which an individual employee belongs, there are differences between the public interest protected by the EEOC and the private interest of the employee. *Id.* at 333, 100 S.Ct. 1698; *see, e.g., EEOC v. Chemtech Int'l Corp.*, 1995 WL 608333, at *1 (S.D.Tex. May 17, 1995). It would therefore be inconsistent with the remedial purposes of Title VII to bind class members by the EEOC's action, *Gen. Tel. Co. of the Northwest*, 446 U.S. at 333, 100 S.Ct. 1698, and problematic to define the nature of the relationship between the EEOC and the general class members.

The intent of the April 12, 2002 ruling was to protect members of the class from undue influences, and the Court had ordered that Morgan Stanley notify EEOC prior to contact. Upon further reflection, the Court finds that the order perhaps unnecessarily restricts Morgan Stanley's access to potential witnesses. At the same time, however, the prior order inadequately protects class members from the potential influences inherent in their employment status. Thus, while the Court still finds that some form of restriction is necessary, the modifications discussed below better serve the legitimate interests of the parties involved.

■ "[A]n order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties.... [S]uch a weighing—identifying the potential abuses being addressed—should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101–02, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). Coercion of potential class members by the class opponent may exist if both parties are "involved in an ongoing business relationship." *Ralph Oldsmobile, Inc. v. General Motors Corp.*, 2001 WL 1035132, at *3 (S.D.N.Y. Sept.7, 2001) (*quoting Kleiner v. First Nat'l Bank*, 751 F.2d 1193, 1202 (11th Cir.1985)). Courts have found the danger of such coercion between employers and employees sufficient to warrant the imposition of restrictions regarding communication between defendants and potential class members. *See, e.g., Bublitz v. E.I. duPont de Nemours & Co.*, 196 F.R.D. 545, 547 (S.D.Iowa 2000); *Abdallah v. Coca–Cola Co.*, 186 F.R.D. 672, 678–79 (N.D.Ga.1999); *EEOC. v. Mitsubishi Motor Mfg. of America, Inc.*, 960 F.Supp. 164, 168 (C.D.Ill.1997).

■ The Court must balance the interest of the parties in presenting their respective positions and the interest of class members in being free from inappropriate influences. In making this determination,

the Court has taken into account that the heart of this case, both from the point of view of the EEOC and Morgan Stanley, is the statistical data. EEOC suits are in the nature of class actions. *Gen. Tel. Co. of the Northwest,* 446 U.S. at 328, 100 S.Ct. 1698. As such, the proof will mirror that in a class action, that is, as showing that there is a gross disparity in compensation and promotion of women who hold the positions of Associate, Vice–President, Principal and Managing Director in Morgan Stanley's Institutional Equity Division compared to their male counterparts. *Ottaviani v. State University of New York at New Paltz,* 875 F.2d 365, 370–71 (2d Cir. 1989) ("[P]laintiffs in a disparate treatment case frequently rely on statistical evidence to establish that there is a disparity between the predicted and actual treatment of employees who are members of a disadvantaged group, and to argue that such disparities exist because of an unlawful bias directed against those employees."); *Robinson v. Metro–North Commuter R.R. Co.,* 267 F.3d 147, 158 (2d Cir.2001) (*quoting* 1 Arthur Larson et al., Employment Discrimination § 9.03[1], at 9–18 (2d ed. 2001)) ("Plaintiffs have typically depended upon two kinds of circumstantial evidence to establish the existence of a policy, pattern, or practice of intentional discrimination: (1) statistical evidence aimed at establishing the defendant's past treatment of the protected group, and (2) testimony from protected class members detailing specific instances of discrimination."). In this context, the testimony of individual women, though important, only serves to bring the bare statistics to life. *Rossini v. Ogilvy & Mather, Inc.,* 798 F.2d 590, 604 (2d Cir.1986) (*quoting Int'l Brotherhood of Teamsters v. United States,* 431 U.S. 324, 339, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)). Thus, the EEOC cannot establish a classwide pattern from these individuals nor

can Morgan Stanley disprove such a pattern from such testimony.

Consequently, while access to individual women is appropriate, the need for such access cannot be characterized as compelling. In contrast, the potential class members are at a distinct disadvantage when approached by the parties in this case, who have proven extremely contentious. Because of the possibility of coercive communication, the Court finds that there is a legitimate need to protect potential class members. Although Morgan Stanley will be allowed to contact employees who have not agreed to join the lawsuit, the Court imposes the following safeguards. Employees must be told that there is a pending lawsuit which they may join, and that it is unlawful for Morgan Stanley to retaliate against them if they do. In addition to informing employees of the right to non-retaliation, the notice must also provide a short summary of the claims in the EEOC lawsuit so that employees can make an informed decision concerning their interest in the case. Furthermore, because the interest of the employees/potential class members is not coextensive with that of the EEOC, they should be apprized of this fact. Therefore, the notice should inform employees that they are not required to join the EEOC action and that they have a private right of action. Such notice must be in writing and in a form approved by the Court.

**B. Disclosure of Cohort Salary and Promotion Data**

At the conference on April 12, 2002, the Court denied Morgan Stanley's request to limit disclosure of compensation and promotion data to actual class members or claimants. The Court balanced the EEOC's "desire for full disclosure of relevant information against the defendants' desire to preserve the privacy" of

its compensation and promotion data. *Rossini*, 798 F.2d at 601 (finding no error in district court order issued with consent of class that permitted attorneys only to have access to personnel files). After reviewing the defendants' papers, considering their arguments and balancing both parties' interests, the Court found that potential class members need access to that information. Because compensation and promotion data is such a closely guarded secret, many women may not know definitively if they were victims of discrimination. The situation is further compounded by reluctance on the part of the women to come forward because of fear of retaliation. Consequently, the EEOC has a legitimate need to show these potential class members relevant information to help them decide if they were victims of discrimination, and ultimately, whether to file a claim and seek EEOC representation. Moreover, Morgan Stanley's fears about widespread dissemination of the data are mere speculation. Therefore, the Court ruled that the EEOC may show class members comparison information that is relevant to prove their individual cases. Moreover, in appropriate cases where the employee has relevant knowledge, comparative data of other individuals may be disclosed to that individual. In order to protect the confidential nature of the compensation data, all class members must sign a confidentiality agreement before viewing the data in question.

## IV. CONCLUSION

For the foregoing reasons, this Court (1) **ORDERS** the parties to submit to the Court a joint proposed notice by June 7, 2002, which complies with the safeguards indicated herein regarding communication with potential class members, and (2) **DENIES** Morgan Stanley's request to limit disclosure of compensation and promotion data.