Andrea SORRENTINO, D'Angelo and Patricia Jackson, Louis Apa, Steven Andelman, Peedo and Saifon Pituk, Manny Delmas and Barbara Lindon, Chandeep Sodhi, Jaspreet Sodhi, Jaclyn Tesoriero, Kimberly Cilone, Marie Varallo, and Hsiangchi Hsu, individually and on behalf of themselves and all other persons similarly situated, Plaintiffs,

v.

ASN ROOSEVELT CENTER, LLC d/b/a Archstone Westbury, Archstone Smith Communities LLC, Archstone Smith Operating Trust, John Doe Corporation I Through X, Defendants.

Jessica Ventimiglia, Paul Pfleiderer, Gina Eppolito, Wendy Williams–McDonnell, Mark McDonnell, Darryl J. Osojnak, Beth Osojnak, Sharise Greenwald, Leonard Wasserman, Albert Comanda, and Angeline Comanda, individually and on behalf of themselves and all other persons similarly situated, Plaintiffs,

v.

Tishman Speyer Archstone–Smith Westbury, L.P., f/k/a ASN Roosevelt Center, LLC d/b/a Archstone Westbury, Defendant.

In re Archstone Westbury
Tenant Litigation.

Nos. 08CV0550 (ADS)(ETB), 08CV1010 (ADS)(ETB), 08CV1751 (ADS) (ETB).

United States District Court,
E.D. New York.

Oct. 31, 2008.

Lowey Dannenberg Cohen & Hart, P.C. Malverne, NTY (Richard Wolfe Cohen, Jeanne F. D'Esposito, Scott Vincent Papp, Of Counsel), for Plaintiffs.

Westerman Ball Ederer Miller & Sharfstein, LLP, Mineola, NY (William Edward Vita, Jennifer L. Noe, Of Counsel), Shook Hardy & Bacon, LLP, Washington, DC (Peter Strand, David Thorne, Rebecca Schwartz, Of Counsel), for Defendants.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

## I.  BACKGROUND

The present motion highlights the need to balance the first amendment rights of defendants to communicate with absent putative class plaintiffs against the protection of those absent parties from settlement offers that are potentially overreaching or coercive.

The plaintiffs are former tenants of a luxury apartment complex located at 1299 Corporate Drive, Westbury, N.Y. 11590 (the "Westbury Complex").  On or about November 27, 2007, the tenants were notified by their landlord, ASN Roosevelt Center, LLC d/b/a Archstone Westbury ("Archstone Westbury"), that they would have to vacate their apartments due to water intrusion at the Westbury Complex. The tenants were instructed that their leases would be terminated and they had to vacate the premises by March 31, 2008. The letter explained that mold had been found in spaces between the exterior and interior of the wall surfaces and that due to the extensive nature and scope of the

work required to be done, the buildings would need to be vacant during reconstruction. The tenants dispute whether the leases were properly terminated.

Presently before the Court are three putative class-action cases arising from the circumstances described. The matters are title *Sorrentino v. ASN Roosevelt Center, LLC,* No. 08CV0550; *Ventimiglia v. Tishman Speyer,* No. 08CV1010; and *In re Archstone Westbury Tenant Litigation,* 08CV1751, all three cases were individually removed from New York State Supreme Court, Nassau County.

On August 5, 2008 the named plaintiffs in all three cases filed a motion by Order to Show Cause seeking a temporary restraining order (1) enjoining the defendants, pursuant to Rule 65 of the Federal Rules of Civil Procedure, from communicating individual settlement offers to members of the proposed class until such time as the Court has reviewed and approved the contents of such communications, in order to ensure that all proposed class members are fully advised of their rights and the consequences of accepting defendants' offer of settlement; (2) requiring defendants to include in their settlement communications a court-approved notice from plaintiffs' counsel which informs class members of their rights regarding the pending class action litigations; and (3) requiring defendants to produce to the plaintiffs' counsel a complete list of the names and current addresses of all former tenants of the Archstone Westbury apartment complex.

The Court denied the request for a temporary restraining order and put the matter down for oral argument on August 4, 2008. On August 6, 2008, the parties requested postponement of the oral argument and the defendants agreed to refrain from communicating with potential class members until the hearing on September 15, 2008. Following the hearing, the defendants again agreed to continue to refrain from communicating with potential class members until the Court ruled on the motion.

In their initial filing, the plaintiffs contended that the Court should supervise communications by the defendants with potential class members to prevent the possibility that those parties would surrender their claims without being fully advised of their rights and the existence of the class litigations and to protect them from making an uninformed decision to accept a nominal settlement offer. Further, the plaintiffs argued that because of past and/or future landlord-tenant relationship, those tenants who wish to return to the Westbury Complex following reconstruction are dependant on the defendants to offer them a suitable unit and to set the monthly rent and other lease terms. According to the plaintiffs, this created the possibility of coercion, and, in the plaintiffs' view, the defendants' proposed offer of one month's free rent to returning tenants and half that amount in cash payment to those who do not return was an inappropriate manifestation of that coercion. Finally, the plaintiffs asserted that defendants settlement communications to potential class members should be accompanied by a letter from plaintiffs' counsel.

In response, the defendants argue that their proposed settlement offers are not misleading or coercive, even though they provide that "Archstone will not lease Westbury apartments to former Archstone Westbury residents who have active or potential legal claims pending against the company." According to the defendants, these offers are not coercive because those parties retain the choice to either accept the offer and return to the Westbury Complex or reject the offer and pursue other avenues. In addition, the defendants contend that the plaintiffs are incorrect in

their assertion that they are merely offering what the potential class members are already entitled to as they never previously made an unconditional offer to all tenants to enter into new lease agreements after the leases were properly terminated.

In reply, the plaintiffs contend that they do not seek to prevent the defendants from making settlement offers, but rather, that the settlement notices in the form proposed are misleading and coercive. The plaintiffs contend that the offer notices are misleading because they fail to advise absent class members of the ongoing class action litigation and the options available to they if they decline the defendants' offer. Further, the plaintiffs contend that the notices are coercive in that they could cause absent class members to believe that the must accept the settlement and sign the proffered release in order to return to the Westbury Complex or to receive a letter of reference from their former landlord, which may be required in seeking future housing. The plaintiffs state that because the leases were inappropriately terminated and the former tenants retain a legally protected right to return, the defendant cannot offer a settlement on such terms.

## II. DISCUSSION

In *Gulf Oil v. Bernard*, 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981), the Supreme Court stated that:

[A]n order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties.... In addition, such a weighing-identifying the potential abuses being addressed-should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances.

*Gulf,* 452 U.S. at 101–02, 101 S.Ct. 2193.

■ "[A] court's power to restrict communications between parties and potential class members ... appl[ies] even before a class is certified." *Ralph Oldsmobile Inc. v. Gen. Motors Corp.,* No. 99 Civ. 4567, 2001 WL 1035132, at *2 (S.D.N.Y. Sept. 7, 2001). Fed.R.Civ.P. 23(d)(1) provides that the court may issue orders that:

(B) require—to protect class members and fairly conduct the action—giving appropriate notice to some of all class members of:

(i) any step in the action

(ii) the proposed extent of the judgment; or

(iii) the members' opportunity to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, to otherwise come into the action;

(C) impose conditions on the representative parties or on intervenors....

■ The court's authority to regulate communications under Rule 23(d) "is not limited to communications that actually mislead or otherwise threaten to create confusion, but extends to communications that interfere with the proper administration of a class action or those that abuse the rights of members of the class." *In re Currency Conversion Fee Antitrust Litig.,* 361 F.Supp.2d 237, 252 (S.D.N.Y.2005). In addition, "where there is a relationship that is inherently coercive, the court does not need to make a finding that a particular abuse has occurred. The court, however, must still require a clear record of threatened abuses." *Ralph Oldsmobile,* 2001 WL 1035132, at *3 (internal quotations and citations omitted) (holding that the record supported "findings of potential

coercion and potentially unknowing waivers of rights").

## A. As to the risk of coercion or abuses

■■■ "If the class and the class opponent are involved in an ongoing business relationship, communications from the class opponent to the class may be coercive." *In re Currency Conversion Fee Antitrust Litig.*, 361 F.Supp.2d at 253 (internal quotations and citations omitted). Here, in light of the previous landlord-tenant relationship between the defendants and the former residents of the Westbury Complex and the impending offer to return, the Court finds a risk of coercion. If the class members choose to return, they will be dependent on the defendants to obtain an apartment in the first instance, and, also, for priority selection of suitable dwelling units, lease terms, and future services. *See id.* (finding that communications were potentially coercive where class members were reliant on the defendants for their future credit needs as well as information about the litigation); *E.E. O.C. v. Morgan Stanley & Co., Inc.*, 206 F.Supp.2d 559, 563 (S.D.N.Y.2002) (finding a danger of coercion in communications between employer and employees).

The Court finds that although it cannot regulate the content of the defendant's offer, in light of the relationship between the parties, Rule 23(d)(1), and the plaintiffs' position that Archstone is still bound by the original leases, a contemporaneous position letter mailed together with the defendants' proposal would be appropriate to ensure that the parties make an informed decision. Without such a letter, the potential class members will be reliant on the defendants' notice for information about the litigation. The Court finds that a position letter from plaintiffs' counsel will prevent the type of "unilateral communications scheme" that is "rife with potential for coercion," *In re Currency Conversion Fee Antitrust Litig.*, 361 F.Supp.2d at

253 (internal quotations and citations omitted), while "limit[ing] speech as little a possible." *Gulf Oil*, 452 U.S. at 101–02, 101 S.Ct. 2193, 68 L.Ed.2d 693.

## B. As to the Defendants' settlement offer

The plaintiffs contend that whether the proposed settlement terms are in fact coercive or abusive will turn in large part on whether the defendants properly terminated the leases in effect when the notice to vacate was distributed to residents of the Westbury Complex in November of 2007. (Notice of Removal, Part 3, Exh. B, Feb. 8, 2008). In that notice, the defendants terminated all existing leases by invoking the "catastrophic damage" clause of the lease agreements, which provides that: "If Owner considers fire or catastrophic damage substantial, Owner may terminate this Lease within a reasonable time by giving Resident written notice. If the Lease is so terminated, Owner shall refund prorated rent and all deposits, less deductions." (Notice of Removal, Part 3, Exh. B, Feb. 8, 2008).

The plaintiffs contend that the water intrusion and associated mold-growth are not the type of "catastrophic damage" falling within the purview of the catastrophic damage clause of the lease agreement. Accordingly, the plaintiffs contend, because defendants' termination of the lease agreements was improper, the settlement offers are coercive in preventing those who do not execute releases the from returning to the Westbury Complex, as they are legally entitled to return.

■■■ Although the Court finds that a contemporaneous letter from plaintiffs' counsel is appropriate in this case, the Court is without authority to review the content of the proposal. Even where the Court acts as a fiduciary for absent class members in approving settlements in certi-

fied class-actions, "it is not the Court's prerogative to pick and choose terms of the settlement, redact portions of the agreement, or substitute terms more to the Court's liking. Rather, the Court's duty is to evaluate the settlement as a whole, and determine if the settlement as a whole is fair, reasonable, and adequate." *McBean v. City of New York*, 233 F.R.D. 377, 382 (S.D.N.Y.2006) (citing Manual for Complex Litigation, Fourth § 21.61 (2004)).

■ Importantly, in *Weight Watchers of Philadelphia, Inc. v. Weight Watchers International, Inc.*, 455 F.2d 770 (2d Cir. 1972), the Second Circuit noted that a putative class action plaintiff has no legally protected right to sue on behalf of others and is without authority to prevent negotiation of settlements between the defendant and potential call members, pointing out that "it is only the settlement of the class action itself without court approval that [Fed.R.Civ.P. 23] prohibits." *Weight Watchers*, 455 F.2d at 773, 775. Indeed, the proposed settlement offer and notices here are directed to individual members of a yet uncertified class. This is not a class settlement as contemplated by Rule 23 and would have no binding effect on members of the class who reject the settlement offer. Accordingly, the Court cannot rewrite the terms of the defendants' proposal.

Further, the Court declines to make a final determination on the legality of the lease terminations on the present abbreviated record. Such a determination will likely require evidence that all of the leases contained the same termination clause, as well as factual findings regarding the true cause of the water intrusion and the seriousness of the mold situation, including whether there is any negligence on the part of the defendants or third parties. In addition, the Court notes that the plaintiffs, at this juncture, have not established that absent class members will be coerced or mislead into believing that if they do not settle and release their claims against the defendants, the defendants will withhold reference letters to future landlords. The defendants have not manifested any such intention.

The determinations of whether the leases were properly terminated are best saved for another day and the Court will not attempt to restructure the defendants' offer. However, this does not preclude the defendants from making an offer to independent parties, with a contemporaneous letter from plaintiffs counsel, which offer they remain free to decline. In this unusual settlement situation, this contemporaneous letter by plaintiffs' counsel will serve as an appropriate counterbalance by notifying absent class members of the plaintiffs' position regarding termination of the leases and their contention that the former tenants have the right to return irrespective of their agreement to settle their claims.

### III. CONCLUSION

For the foregoing reasons it is hereby:

**ORDERED,** that the plaintiffs' motion for the Court's supervision of defendants' communications with potential class members is granted, in part, and denied, in part; and it is further

**ORDERED,** that the defendants shall on ten days notice inform plaintiffs' counsel of: (1) the contents of any notice and/or settlement proposal that it will send to potential class members; (2) the manner of transmission, including the date, time, and location from which any mailing will be made; and (3) a complete list of the contact information that defendants will use to communicate their notice or proposal to the recipients thereof. This shall be considered a continuing obligation; and it is further

**ORDERED,** that the plaintiffs' counsel shall prepare and serve on defendants' counsel the contents of its "contemporaneous letter" within five days of receipt of the notification by defendants' counsel. This shall also be considered a continuing obligation.

**SO ORDERED.**